ATTN,. Clerk Of District
Court Of California
Eastern District.

**FILED**

JUL 13 2012

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
            DEPUTY CLERK

(RE: Ezequiel Romo V. Marthew Cate et al.,
    Caseno. 2:11-CV-02898 DAD.)

PLEASE Take Notice Pursuant To Court Order
May 30. 2012. Fed. R. Civ. P. 8 (a).
   On June 12. 2012 plaintiff Filed An Amended
complaint.
   On July, 10th. 2012 pursuant to Fed. R. Civ. P.
15(a) plaintiff Files A Ameded complaint As
A Matter of law to Name Defendants In Chims
of Causation. (An Original / One copy.)

July 10th.
   2012

Cordially Plaintiff
   Pro Se.
Ezequiel Romo K.38661
CCI · 4B' 8A1 210 P.O. Box 1906
Tehachapi Ca
      93581.

1  EZEQUIEL Romo
2  K 38661 P.O. BOX 1906
3  TEHACHAPI CA
      93581.
4
   IN PRO SE:
5
6              In the United States District
7              Court Eastern District Of
8                       California.
9
10  EZEQUIEL Romo,
11      Plaintiff

12      Vs.

13  MATHEW CATE, ET AL.,          No. 2:11- CV-2898 DAD P
14          DEFENDANTS).

15                     DEMAND For Jury Trial.

16

17       Amended Complaint As Matter Of Law.
18                        I.

19  1. Plaintiff, EZEQUIEL Romo Pursuant To Court Order OF
20  May 30. 2012., And Fed. R. Civ. P. 8 (a) (2).
21  2. The Plaintiff In Original Complaint (Named) Unidentified
22  Defendant(s) As Does 1 Through 50.
23  3. Since filing the Complaint Plaintiff Has Determined
24  the Names Of Defendant(s).
25  4. On July10.2012, Plaintiff Pursuant to Fed. R. Civ.
26  P.15 (a) As A Matter OF Law Amends Complaint.
27

# II.
## JURISDICTION

1. THIS ACTION is BROUGHT PURSUANT TO 42 U.S.C SECTIONS 1983 AND 1985 TO REDRESS THE DEPRIVATION UNDER COLOR OF STATE LAW OF RIGHTS SECURED BY THE CONSTITUTION OF UNITED STATES. JURISDICTION is BASED UPON 28 U.S.C. SECTION 1331 AND 1343. THE COURT AISO HAS PENDANT JURISDICTION OVER STATE CLAIMS PURSUANT TO 28 U.S.C. SECTION 1367. PLAINTIFF, SEEKS DECLATORY RELIEF PURSUANT TO 28 U.S.C. SECTIONS 2201 AND 2202. THE UNLAWFUL ACTS AND PRACTICE ALLEGED OCCURRED PRIMARILY WITHIN THIS JUDICIAL DISTRICT AND THE MAJORITY OF THE DEFENDANT(S) RESIDE WITHIN THIS DISTRICT 28 U.S.C. SECTION 1391(b). PLAINTIFF RESPECT FULLY REQUEST A JURY TRIAL ON THESE ALLEGATIONS.

# III.
## PARTIES.

1. PLAINTIFF, EZEQUIEL ROMO IS AND AT ALL TIMES MEN TIONED HEREIN, A PRISONER OF THE STATE OF CALIFORNIA, IN THE CUSTODY OF THE (CDCR) CALIFORNIA DEPARTMENT OF COR RECTIONS AND REHABILITATION. CURRENTLY CONFINED AT (CCI) CALIFORNIA CORRECTIONAL INSTITUTION AND HOUSED WITH THE (SHU) SECURITY HOUSING UNIT.

2. DEFENDANT(S), MATHEW CATE IS THE DIRECTOR OF THE CDCR AND LEGALLY RESPONSIBLE FOR THE OVERALL OP ERATION OF THE DEPARTMENT AND EACH INSTITUTION UNDER IT'S JURISDICTION INCLUDING CALIFORNIA STATE PRISON AT SACRAMENTO (CSP/SAC.).

## III.

3. DEFENDANT, JAMES WALKER IS THE WARDEN AT CSP/ SACRAMENTO. HE IS LEGALLY RESPONSIBLE FOR THE OVERALL OPERATION OF CSP/SAC AND FOR THE WELFARE OF ALL PRISONERS OF THAT PRISON.

4. DEFENDANT, T. VIGRA IS THE CHIEF DEPUTY WARDEN (CDW) AT CSP/SAC. AT ALL RELEVANT TIMES MENTIONED HEREIN, HE WAS LEGALLY RESPONSIBLE FOR ASSISTING THE WARDEN AT CSP/SAC WITH THE OPERATION OF ITS INSTITUTION.

5. DEFENDANT, G. DRUMMOND IS THE CHIEF DEPUTY WARDEN (CDW), AT ALL RELEVANT TIMES MENTIONED HEREIN.

6. DEFENDANT, JOSEPH STEWART AT ALL RELEVANT TIMES MENTIONED HEREIN, HELD THE RANK OF LIEUTENANT, ASSIGNED TO CSP/SAC.

7. DEFENDANT, KRAMER AT ALL TIMES RELEVANT HEREIN HELD THE RANK OF LIEUTENANT, ASSIGNED THE RANK AS ACTING CAPTAIN AT CSP/SAC.

8. DEFENDANT, BUCHANON AT ALL RELEVANT TIMES HEREIN HELD THE RANK OF SERGEANT, ASSIGNED AT CSP/SAC.

9. DEFENDANT, ENGELLENER AT ALL RELEVANT TIMES HEREIN HELD THE RANK OF SERGEANT, ASSIGNED AT CSP/SAC.

10. DEFENDANT, ELLEN/ALLEN AT ALL RELEVANT TIMES HEREIN HELD THE RANK OF SERGEANT, ASSIGNED AT CSP/SAC.

11. DEFENDANT, R. MENDOZA AT ALL RELEVANT TIMES HEREIN HELD THE RANK OF CORRECTIONAL OFFICER AT CSP/SAC.

12. DEFENDANT, E. BAKER AT ALL RELEVANT TIMES HEREIN HELD THE RANK OF CORRECTIONAL OFFICER AT CSP/SAC.

13. DEFENDANT, (Lt) LIEUTENANT J. BAKER AT ALL RELEVANT TIMES HEREIN HELD THE RANK AS APPEALS REVIEWER.

14. DEFENDANT, L. WILLIAMS AT ALL TIMES HEREIN HELD THE RANK AS APPEALS REVIEWER.

15. DEFENDANT, C. HOLSTORM AT ALL RELEVANT TIMES HEREIN HELD THE RANK AS APPEALS REVIEWER.

# Introduction Of Facts.

1. This ACTION(S) ARISE FROM DEFENDANTS ACTS AND OR policies which HAVE CAUSED PLAINTIFF TO BE Wrongly placed on CONTRABAND SURVEILLANCE WATCH, (CSW) AND RETAINED On CSW FOR AN EXTENDED PERIOD OF TIME BASED On Plaintiff's LEGITIMATE COURT Order ARRIVAL AT CSP SACRAMENTO ARBITRARILY:

A). Without DUE PROCESS OF LAW; B). INTENTIONALLY And Without probable CAUSE; C). FOR EIGHT DAYS In CONDitions That Adversely Impacted Plaintiff's physical And MENTAL WELL-BEING; D). SUBJECTIVE PUNITIVE DISCIPLINE ABSENT A Rules Violation Report (RVR) OF ANY Guilt.

FACTS PERTAINING TO PLAINTIFF'S PLACEMENT ON CSW; RETENTION.

1. PLAINTIFF WAS ISSUED A COURT Order TO BE PRESENTED On NOVEMBER 20. 2009.

2. DEFENDANT(S) WERE ISSUED THE SAME COURT Order On OCTOBER 30, 2009.

# IV. STATEMENT OF FACTS.

1. November 13, 2009. Plaintiff, Ezequiel Romo arrived at California State Prison at Sacramento (CSP/SAC). At 10:30 A.M. On Our To Court Order (People V. Romo case No,. 04F05789) For Resentce. Stripped Naked of all clothing and underwent a visual/Body-Cavity Inspection and wanded by a metal-detector.

2. Defendant(s): Joseph Stewart (LT) Lieutenant Issued a CDCR 114D Form Notifying plaintiff of placement In (AD/SEG) administrative segregation, and personally Authorized plaintiff could possess his Legal-Work [Cal.Code.Regs.Tit.15., 3160]. at 12:40 p.m., Defendant(s): R. Mendoza and E. Baker, Correctional Officer's of Investigative Services Unit, (ISU). Entered (R/R) and spoke with (LT), Stewart Joined by Defendant Buchanon (SGT), Sergeant In Stewarts Office. As R. Mendoza and E. Baker Exited (R/R), Baker made the comment of Calling plaintiff "Romero".

3. Plaintiff [Ezequiel Romo] has never known defendant E. Baker. R. Mendoza, participated In the Investigation of plaintiff's court Ordered case (August 6.2003).

4. Defendant, Buchanon [stated] he would search plaintiff legal work and Issued as Authorized by (LT), Stewart. (C/O) Correctional officer Rafferty telephoned (AD/SEG) To House plaintiff due to overcrowding of (R/R). An unidentified correctional officer arrived, and was told by SGT, Buchanon Not to escort plaintiff to AD/SEG.

5. Defendant(s): I. Montez and R. Hood, Correctional officer's arrived to escort plaintiff, and when plaintiff requested

5

1  His legalwork was told by Defendants: Montez and Hood he
2  would not possess any property where plaintiff was to be
3  housed.

4  6.  Plaintiff requested to speak with Defendant (Lt), J.
5  Stewart and know where he was to be housed and why
6  plaintiff was being denied property/legal-work as authorized.

7  7.  Defendants: Montez and Hood [stated] Lt, J. Stewart was
8  busy and they were not gonna bother him and for
9  plaintiff to just submit to handcuffs. Defendant, (Sgt)
10  Buchanon [stated] (Lt), J. Stewart had refused to speak to
11  plaintiff and hear any objections plaintiff had to say,
12  (Sgt), Buchanon further [stated] Nothing personal just bus-
13  iness that plaintiff was not going to ad/seg, was ordered
14  to be placed on csw. (See: Exhibit. A)

15  8.  Plaintiff requested an x-ray to prove he was not in
16  possession of any contraband, and Defendant, (Sgt) Buchanon
17  refused.

18  9.  Plaintiff believes by circumstantial evidence and legit-
19  imate court order arrival at CSP: Sacramento, while in
20  (R/R), recieving and release Defendants: (Lt), J. Stewart,
21  R. Mendoza, E. Baker, And (Sgt), Buchanon directly and
22  indirectly conspired to place plaintiff on csw with-
23  out any documented probable cause by the discussion in
24  (Lt), J. Stewarts office between Defendant(s) retaliated
25  against plaintiff's constitutionally established rights.

26  10.  Defendants, continueously refused to allow plaintiff
27  his legalwork as authorized and hear any objections
   And give any documented written notice of csw.

URT PAPER
TE OF CALIFORNIA
; 113 (REV. 3-95)
' 98 10924

11. Plaintiff Having Completed Numerous Visual Strip Searches And Clearing all METAL-DETECTORS. Having BEEN TRANSFERRED From California Correctional Institution, (CCI) On November 12. 2009, And with A LAYOVER AT Duel Vocation At Institution, (DVI).

12. DEPENDANTS: I. MONTEZ And R. Hood Escorted Plaintiff To C. Facility Medical And Stripped Plaintiff NAKED Of All clothing And Given A Visual And Body Inspection And Wanded By A METAL-DETECTOR.

13. Plaintiff Had A Liberty Interest To Be Free From Arbitrarly Cruel And Unusual Punishment Established By Constitution, Due Process Clause. (SEE: EXHIBIT. A).

14. DEPENDANT, (SGT) ENGELLENER Asked Plaintiff Was In Possession Of Contraband. Plaintiff (STATED) He Was NOT And REQUESTED An X·RAY To Avoid CSW, placement. (SGT), ENGELLENER (STATEd) He Does. Not Know Of REASON For CSW placement, And Would Make A phone Call.

15. Plaintiff Was Subjected To WEAR Double Clothing Which Consisted OF: (2) Two Pair OF UnderWEAR Each Of Which Was DUCT-TAPED Indivually On Each LEG And Waist And Stomach One Over The Other; (2) T-shirts Each Indivually And Both Taped Around Waist And Torso, Arms And (2) Two JUMPSUITS Each Indivually And Both Taped On Each ANKLE, CALVE, Thigh, Waist, Stomach And Arms To Limit And Restrict Any Movement. Plaintiff Was Then Subjected To LEG IRONS And WAISTCHAINS; Each Handcuffed To Side Of The Body And placed In A Cold-Cell Without A Toilet Of A Sink And Running Water On A Mattress And Linen.

16. CORRECTIONAL OFFICER, JONES. WAS ASSIGNED TO OBSERVE AND MONITOR DOCUMENTATION OF CSW PLACEMENT OF PLAINTIFF. JONES ISSUED PLAINTIFF A MATTRESS.

17. DEPENDANT, (SGT) ENGELLENER CONFISCATED THE MATTRESS FIVE MINUTES AFTER IT WAS ISSUED. [STATED] PLAINTIFF WAS NOT TO BE ALLOWED ANY PROPERTY WHILE ON CSW, AND FURTHER MENTIONED HE SPOKE (W), LIEUTENANT P. HAIL OF AN X-RAY AND REASON FOR PLAINTIFF'S CSW PLACEMENT AND WAS TOLD NO ONE KNOWS ANYTHING; OR DOES NOT WANTA SAY ANYTHING.

18. DEPENDANTS, AND ALL SUPERVISING CORRECTIONAL OFFICERS ARE ENFORCING AN UNLAWFUL CSW PLACEMENT AND RETENTION OF PLAINTIFF WITHOUT ANY PROBABLE CAUSE ARBITRARY AS ALL CORRECTIONAL OFFICER'S ARE SUBORDINATES. [SEE: EXHIBIT. A).

19. NOVEMBER 14. 2009 DEPENDANTS, E. BAKER AND HERRERIA OF SECURITY AND INVESTIGATIONS (ISU), CAME TO CHECK ON PLAINTIFF AND ASKED IF HE USED THE RESTROOM YET. PLAINTIFF REQUESTED AN X-RAY AND REASON FOR PLACEMENT ON CSW. DEPENDANT E, BAKER [STATED] IT WAS NOT HIS JOB TO TELL PLAINTIFF ANYTHING. HERRERIA [STATED] HE WAS NOT ON DUTY (NOVEMBER 13. 2009) AND ASKED WHY PLAINTIFF WAS AT CSP/ SACRAMENTO. PLAINTIFF [STATED] HE WAS SUCCESSFUL ON APPEAL AND WAS COURT ORDERED TO BE RE-SENTECED.

20. PLAINTIFF'S BELIEF IS HIS ARRIVAL WAS THE REASON OF SUBJECTIVE PLACEMENT ON C.S.W. DEPENDANTS ARE RETALIATING FOR LEGITIMATE ACCESS TO COURTS AND INTERFERENCE WITH LEGAL WORK WHILE PLACED ON CSW TO FUSTRATE AND IMPEDE PLAINTIFF. HERRERIA [STATED] HE BELIEVED PLAINTIFF WAS ALREADY CONVICTED AND SENTCED ON THAT CASE.

URT PAPER
TE OF CALIFORNIA
. 113 (REV. 3-95)
98 10924

1  21. CORRECTIONAL OFFICERS EACH Individually Assigned To Monitor
2  And Document CSW, observations, Asked What If Any Con-
3  traband Plaintiff Possessed. Plaintiff [STATED] HE Was Not In
4  Possession Of Any Contraband And Does Not Know Why HE
5  Was placed on CSW. An [Unidentified] Correctional Officer
6  Mentioned, Security And Investigations Continues To Call
7  Asking If Plaintiff Has Used The Restroom. (SEE EXhibit. A).
8  22. November 16. 2009. plaintiff Was Able To Use The Restroom
9  [Defecate] Absent Any Contraband, Correctional Officer, BoJunda
10 [Stated] HE Would Document on 114A Segregation Order.
11 23. DEFENDANT, (Lt) KRAMER As Acting Captain Reviewed The
12 114D placement Order Of Ad/Seg. At Which plaintiff
13 Reiterated Not Having Any Contraband And Requested An
14 X-Ray And Reason For CSW, placement. KRAMER [STATED]
15 HE Did Not Know The Reason For CSW placement. And
16 Denied plaintiff's Request For X-Ray. (SEE EXhibit. A).
17 24. CORRECTIONAL OFFICER BoJunda Notified plaintiff
18 Was ordered To Be Re-Located To B¹ Facility CSW.
19 25. Plaintiff Was Escorted And placed In A Cell that
20 Previously Occupied [manuel chavez] prisoner Who Had Been
21 On CSW, November 11. 2009. AFTER Release Six-days plaintiff
22 Was placed In Worse Conditions. The Cell Was Not Clean
23 Or Disinfected With prisoners Dirty Linen Still In The
24 Cell And A Bottle Filled With Urine.
25 26. DEFENDANTS Subjected Plaintiff To Unhealthy And
26 Unsanitary living Conditions. A Deliberate Indifference
27 Of Equal Conditions While On CSW With No Legitimate
   penological Interest Adversely Affected plaintiff.

URT PAPER
TE OF CALIFORNIA
). 113 (REV. 3-95)
· 98 10924

9

27. A Prisoner (Guillermo Panameno) In The Next Cell Were on CSW (STATED) he Was Given An X-Ray On November 13, 2009 By Escorting Officer's, Defendants: R. Mendoza And E. Baker. Prisoner (Panameno) Also Stated he And (Manuel Chavez) Were Allowed To Brush Their Teeth And Given Clothing And Linen, Allowed To Wash After Using The Restroom.

28. November 17, 2009. Defendant, (SGT) Ellen As Supervising Officer Of CSW Having To Be Present For Plaintiff To Use The Restroom. (SGT), Ellen (STATED) he Would Not Be Found Or Reached For CSW. (SEE: Exhibit A.)

29. Plaintiff Having To Wait Hours And Often After Shift Change, Or Any Willing Supervisor On One Occassion A Female (SGT) Mironek Had To Stand In As (SGT) Ellen Was Nowhere Around. The Degrading Nature Of a Denial Of Using The Restroom When Naturally Needed Correctional Officer(s) Of Standard Rank Often Would Ask Plaintiff To Hold Any Bowel Movement And Be Certain So When Supervisor's Were Called They Would Not Be Bothered Or Have To Wait On Plaintiff.

30. Defendants Subjected Plaintiff To Punitive Placement On CSW And Denial Of Privacy Having To Urinate And Defecate In Front Of All Staff Supervising And Any Passerby's In An Open Area To Be Observed. While Restrained And Confined In Double Clothing And Shackles Often Added To Discomfort Of Stomach Ache, Cramps Of Being Able To Use The Restroom In Decency.

COURT PAPER
ATE OF CALIFORNIA
D. 113 (REV. 3-95)

P 98 10924

31. Plaintiff was Denied Hygeine to wash and clean appropiately after using the Restroom.

Defendants subjected plaintiff to Unclean Decency of Having to eat meals and use the Rest Room to comply with csw policy and Procedures.

32. November 18. 2009. plaintiff was seen by Initial Classification committee (ICC) while on csw, and [STATED] NOT Having any CONTRABAND and Requested an X.Ray.

33. Defendant, G. Drummond, (CDW) chief Deputy warden, [STATED] He Did Not Know of Reason For csw placement and would Speak to warden James Walker.

34. Defendants Refusal's to acknowledge plaintiff's Requests For an X-Ray and lack of probable cause of placement on csw Denied plaintiff His liberty Intrest. (see: Exhibit. A).

35. Defendant James Walker Failure to Train subordinate officer's and prevent them From maintaining a pattern of Retaliation and Unconstitutional Harrassment For plaintiff's exercise of His First Amendment Right of access to the courts and be Free from cruel and Unusual punishment.

36. Defendants, (Lt). Joseph Stewart and Captain, Kramer Refused and Failed to acknowledge plaintiff's Requests to stop csw placement and allow plaintiff any objections upon Review of CDCR

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

1   114D REVIEW. SUPERVISING DEFENDANTS HAVE BEEN ON NOTICE OF
2   ENFORCING CSW PLACEMENT WITHOUT ANY WRITTEN NOTICE TO PLAIN-
3   TIFF AT EACH AND EVERY OPPORTUNITY AS PLAINTIFF WAS TOLD NO ONE
4   KNOWS ANYTHING DENIED PLAINTIFF ALL DUE PROCESS OF LAW,
5   AND ESTABLISHED CONSTITUTIONAL RIGHTS.

6   37. PLAINTIFF WAS SUBJECTED TO THE PHYSICAL AND MENTAL DISCOM-
7   FORT OF BEING CHAINED SHACKLED AND LEGIRONED FOR EIGHT
8   DAYS, (192) HOURS. WHICH EXACERBATED THE CHRONIC ARTHRITIS
9   AND ASTHMA PLAINTIFF SUFFERS FROM, DOCUMENTED HISTORY
10  PRIOR TO CSW, PLACEMENT.

11  38. DEFENDANTS, DENIED PLAINTIFF ANY ACCESS TO MEDICAL CARE
12  WHILE HOUSED IN HOLDING CELL WITHIN MEDICAL CLINIC ON
13  CSW. DELIBERATELY INDIFFERENT AS PRISONER [GUILLERMO PANA
14  MENO] WAS BEING ISSUED HIS MEDICATION.

15  39. CORRECTIONAL OFFICER, MANDELL WAS ASSIGNED TO CSW, AND
16  ON THE ONLY OCCASSION ALLOWED A NURSE TO TAKE PLAINTIFF'S
17  VITALS AND DOCUMENTED PLAINTIFF'S LOW BLOOD PRESSURE AND
18  A RASH AND BRUISING, SWELLING FROM HANDCUFFS AND
19  SHACKLES. DISCOLORATION OF STOMACH FROM DUCT-TAPE AND
20  THE PEELING AS TORN OFF AND APPLIED AFTER USING THE
21  RESTROOM. (SEE: EXHIBIT. A).

22  40. PLAINTIFF [STATED] HE WAS NOT FEELING GOOD HAD HEAD-
23  ACHE FROM LIGHTS ON AND HAVING TO SLEEP ON BACK
24  AS RESTRAINED THE LOCKS MADE IT DIFFICULT TO SLEEP AS
25  NO MOVEMENT AND SLEEPING ON A METAL BUNK.

26  41. THE [UNIDENTIFIED] NURSE APPLIED ANTIFUNGAL CREAM TO
27  PLAINTIFF'S STOMACH, LEGS AND GAVE HIM TWO-TYLENOL
    AND [STATED] PLAINTIFF WOULD HAVE TO SUBMIT A 7362 MEDICAL

1 FORM TO BE SEEN BY A PHYSICIAN. (SEE: EXHIBIT. A).

2 42. NOVEMBER 20. 2009, DEFENDANT (SGT) Buchanon Notified Plain-

3 TIFF HE WAS SCHEDULED FOR COURT and Would BE TRANSPORTED

4 AS IS ON CSW, NO SHOWER, NO SHAVE and RETURNED TO

5 CSW AFTER COURT.

6 43. PLAINTIFF, REQUESTED HIS LEGALWORK TO GO OVER COURT

7 DOCUMENTS IN PREPARATION FOR RE-SENTCE AND WAS DENIED

8 BY DEFENDANT BUCHANON.

9 44. DEFENDANTS, (SGT) Buchanon DEPRIVED PLAINTIFF OF HIS

10 LEGALWORK WITHOUT ANY LEGITIMATE PENOLOGICAL INTREST.

11 45. CORRECTIONAL OFFICER, FLOOD WAS ASSIGNED TO MONITOR

12 PLAINTIFF ON CSW WAS TOLD BY (SGT) BUCHANON TO GET THE

13 EQUIPTMENT OF CSW FOR COURT WHICH CONSISTED OF A

14 BOTTLE TO URINATE IN AND A STOOL WITH BUCKET TAPED

15 TO SQUAT OVER AND DEFECATE IN.

16 46. DEFENDANT BUCHANON ASKED IF PLAINTIFF HAD ALREADY

17 USED THE RESTROOM [STATING] HE DID NOT WANT PLAINTIFF

18 USING THE RESTROOM WHILE ON TRANSPORTATION OR AT COURT

19 47. PLAINTIFF ASKED FOR AN X-RAY TO BE RELEASED OFF CSW

20 AND DEFENDANT BUCHANON [STATED] IF IT WAS UPTO HIM HE

21 WOULD HAVE RELEASED PLAINTIFF FROM CSW AFTER ONE BOWEL

22 MOVEMENT, BUT IT WAS STEWART'S CALL. WHILE BEING ESCORTED

23 PRISON OFFICALS ASKED HOW LONG IT HAD BEEN SINCE PLAIN-

24 TIFF HAD SHOWERED BECAUSE HE WAS RIPE AND SMELLED.

25 48. NOVEMBER 21. 2009. (SGT) G. WOLF SUPERVISING CSW NOTIFIED

26 PLAINTIFF HE WOULD BE RELEASED FROM CSW, AND HOUSED

27 IN AD/SEG.

49. NOVEMBER 23. 2009 PLAINTIFF REQUESTED HIS LEGAL WORK

1  and personal property from AD/SEG correctional officer
2  W. Almodvar as legal officer. Almodvar [stated] he spoke
3  to (LT), Stewart and was told plaintiff had his legalwork
4  50. Defendants, Joseph Stewart contradictory statements
5  and actions deprived plaintiff of legalwork and due
6  notice of CSW piacement violated plaintiff's constitutional
7  established rights.
8  51. November 25. 2009, plaintiff filed grievence appeal
9  log No. SAC.S0901620 to contest and redress the placement
10 on csw.lack of notice pre and post csw placement.
11 52. Defendants, T.Vigra (cdw) chief deputy warden did not
12 interview plaintiff and denied a impartial fair hearing
13 of csw placement of information relied upon to allow
14 plaintiff any objections to decision maker violated
15 plaintiff's rights established by constitution due
16 process clause.
17 53. November 27.2009 plaintiff was able to submitt medical
18 form 7362 (No.57181) and (no.571615) due to continued
19 pain and discomport from after effects of being shackled
20 and restrained unable to sleep from bruising and fatigue
21 of body.
22 54. plaintiff was seen by a physician and told nothing
23 could be done for the pain and discomport suffered on
24 csw as it was exacerbated from the arthritis of
25 plaintiff the lack of movement just made it difficult.
26 physician issued Tyelonol and antifungal cream for the
27 rash and bruising, discoloration of tape being peeled.

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 8-95)
OSP 98 10924

55. DECEMBER 23. 2009. (LT) J. BAKER ASSIGNED APPEALS REVIEWER
DEFENDANT J. BAKER, INTERVIEWED PLAINTIFF AND [STATED]
THERE WAS NOTHING SHE COULD DO ABOUT CSW PLACEMENT
AND RETENTION BUT WOULD HAVE LEGAL OFFICER W. ALMODVAR
LOCATE PLAINTIFF'S LEGALWORK AND PERSONAL PROPERTY.

56 DECEMBER 29.2009. PLAINTIFF WAS BEING PROCESSED BACK TO
(CCI) CALIFORNIA CORRECTIONAL INSTITUTION, WITHOUT LEGALWORK AND
PERSONAL PROPERTY PLAINTIFF ARRIVED WITH ON NOVEMBER 13. 2009.

57. DEFENDANTS RETALIATED AGAINST PLAINTIFF BY DENYING
PLAINTIFF ACCESS AND POSSESSION OF LEGALWORK AND PROPERTY
WHILE OUT TO COURT ON A LEGITIMATE COURT ORDER VIOLATED
PLAINTIFFS (FIRST, EIGHT AND FOURTEENTH AMENDMENTS) RIGHTS
ESTABLISHED BY THE CONSTITUTION.

58. DEFENDANT (SGT) BUCHANAN [STATED] TO PLAINTIFF WHILE
IN (R/R) RECIEVING AND RELEASE THAT DEFENDANT PERSONALLY
CALLED (CCI) TEHACHAPI TO LET THEM KNOW PLACE PLAINTIFF
ON CSW UPON ARRIVAL; AND THEN WENT ON TO SAY
JUST KIDDING AND LAUGHED.

59. DECEMBER 30. 2009 PLAINTIFF ARRIVED AT (CCI) TEHACHAPI
WITHOUT LEGALWORK AND PERSONAL PROPERTY; AND WAS NOT
PLACED ON CSW PLACEMENT; HOWEVER PLAINTIFF STILL DOES
NOT KNOW WHAT TRIGGERED CSW PLACEMENT ASIDE FROM
CSP / SACRAMENTO SUBJECTING PLAINTIFF ARBITRARILY TO CSW.

60. DEFENDANT, APPEAL REVIEWER (LT), J. BAKER FAILED TO
PROVIDE A MEANINGFUL APPEAL PROCESS PARTIALLY GRANTED
THE 602 (LOG NO. SAC. 8090(620) SHE DOCUMENTS NO INTERVIEW
OF DEFENDANT T. VIGRA STATING DEFENDANT J. STEWART
RECIEVED THE CSW PLACEMENT ORDER FROM T. VIGRA.

1  61. January 6, 2010, plaintiff was Issued CDCR 143 property
2  receipt and some property with personal items still
3  missing and unaccounted for.

4  62. March 9, 2010, Appeals Reviewer, L. Williams documents
5  an additional statement by defendant (Lt) J. Stewart: the
6  Investigation Services Unit (ISU) at CSP/SAC, had been the
7  one to request plaintiff be placed on CSW, based on
8  an "Reasonable suspicion". (See: Exhibit. A)

9  63. Defendants Failed to document any "reasonable suspicion"
10 on November 13, 2009; and fail to Identify what if any
11 reasonable suspicion, Further, Appeals Reviewer documents
12 the Administrative Error of CDC114A Segregation order
13 record which details CSW observation, documentation
14 lost and cannot confirm or deny plaintiff's claims.

15 64. March 12, 2010, Appeals Reviewer partially Granted the
16 602.

17 65. March 31, 2010, plaintiff disatissfied Re-submits for
18 Director's level Review.

19 66. Appeals Reviewer's Denied meaningful Review of
20 the Decision of CSW placement violates constitutional
21 established First Amendment.

22 67. Defendants all supervisory prison officals have
23 violated plaintiff's constitutionally Established Rights
24 without any due process of law, and arbitrarily subject
25 plaintiff to eight days punitive segregation without
26 any documented penological Interest for plaintiff's
27 arrival at CSP/Sacramento on a court order. (Eight
28 and Fourteenth U.S. Amendments; Cal. Const. Art. I. §§15)

16

1

2  68. April 27.2010. Plaintiff, recieved another property

3  reciept cdcr 143 form. of some of the unaccounted

4  legalwork and personal property. However still are

5  missing legalwork, personal pictures and drawings

6  plaintiff arrived with on November 13.2009 at CSP/SAC.

7  69. Defendants (Lt) Stewart authorized plaintiff

8  could possess his legalwork, Defendant (Sgt) Buchan

9  our [stated] he would issue to plaintiff after he

10  searched as authorized by Defendant Stewart.

11  70. Defendants witheld and lost, misplaced and

12  or destroyed plaintiff legally authorized property

13  without any written notice.

14  71. Defendants actions to arbitrarly place plaintiff

15  on CSW to retaliate against for his legitimate

16  First Amendment In successful appeal of court order

17  re-sentence, denial of legalwork at all times while

18  housed at CSP/Sacramento to frustrate and impede

19  plaintiff. circumstantial evidence of Defendant's'

20  state of mind Is provided by the absence of any

21  reliable evidence In support of CSW notice, placement.

22  72. July 8.2010. Appeals reviewer examiner C. Holstorm

23  denied directors level review. (IAB Case No. 0920583).

24  73. Plaintiff has diligently exhausted all administ-

25  rative remedies and filed a Board of Control

26  claims form (on March 31.2010.) and Is without

27  redress of constitutional rights established by

Institutional means of administrative appeal of meaningful review (Cal. Code. Regs., Tit. 15. 3084.1. (a1.(d)) 42. U.S.C. 1983. And 1985. (see: Exhibit. A).

75. Defendants J. Baker and L. Williams, C. Holstrom appeals reviewer's denied meaningful review of any procedural due process review of CSW, placement violated plaintiff's First, Eight and Fourteenth amendments on each level of appeal process.

76. Defendants or more than one of them have a history of a consistent pattern of deliberate, willful indifference to the constitutional rights of prisoners.

77. Plaintiff placement on CSW for an extended Eight day period pursuant defendants' vague/overboard, arbitrary and punitive policy, practices, rules and regulations constitutes an atypical and significant hardship.

78. Defendants have a custom and policy of maintaining, an unwritten but widely understood code of silence designed to encourage prison employees to remain silent regarding the improper behavior of their fellow employees. As a result of their failure to train subordinates and their active opposition to investigations of wrongdoing by officers, supervisory defendants have ratified and perpetuated this practice and policy.

## V

# RELIEF REQUESTED.

WHEREFORE PLAINTIFF PRAYS FOR THE FOLLOWING:

1). DECLATORY JUDGEMENT THAT DEFENDANTS ACTS AND PRACTICES DESCRIBED HEREIN VIOLATE PLAINTIFF'S RIGHTS;

2). A PRELIMINARY AND PERMANENT INJUNCTION WHICH PROHIBITS AND REQUIRES THAT DEFENDANTS, THEIR AGENTS/ EMPLOYEES SUCCESSOR(S); (I) CEASE HARRASSMENT, RETALIATION AND REPRISAL FOR PLAINTIFF'S COURT LITIGATION;

3). COMPENSATORY AND PUNITIVE DAMAGES OF FIFTY (50)THOUS AND DOLLARS FROM EACH DEFENDANT FOUND TO HAVE INTENTIONALLY DEPRIVED PLAINTIFF HIS RIGHTS;

4). PLAINTIFF'S COST OF SUIT AND FEES INCURRED;

5). REASONABLY ATTORNEY FEES PURSUANT TO 42. USC 1983. AND ANY OTHER GROUNDS AUTHORIZED BY LAW;

6). TRIAL BY JURY INCLUDING TO THE EXTENT THAT LEGITIMATE SECURITY CONCERSLS DICTATE JUDICIAL PROCEEDINGS REGARDING THE SPECIFIC FACTUAL GROUNDS THAT PURPORTEDLY JUSTIFY PLAINTIFF'S EXTENDED PLACEMENT ON CSW;

7). FURTHER RELIEF THAT THE COURT DEEMS JUST.

Ezequiel Romo
PLAINTIFF
EZEQUIEL ROMO
IN PRO SE.



# FACTS PERTAINING TO DEFENDANTS INTENT.

1. DEFENDANTS HAVE INTENTIONALLY PLACED PLAINTIFF ON CSW WITHOUT ANY "PROBABLE CAUSE" FOR A LEGAL AND LEGITIMATE ACCESS TO COURTS.

2. DEFENDANTS HAVE NO LEGITIMATE PENOLOGICAL INTREST IN PROHIBITING PLAINTIFF'S LEGAL PROPERTY AND LEGITIMATE TO OUT TO COURT STATUS COURT ORDER RESENTENCE.

3. DIRECT EVIDENCE: DEFENDANTS RETALIATORY INTENT IS PROVIDED BY ACTIONS/AND INACTIONS OF STATEMENTS TO PLAINTIFF WHILE HOUSED ON CSW.

4. CIRCUMSTANTIAL EVIDENCE: DEFENDANTS RETALIATORY INTENT AND OF LEGITIMATE PENOLOGICAL INTREST IS PROVIDED BY THE FACT CDCR.114D FORM, SEGREGATION ORDER DOES NOT DOCUMENT ANY "REASONABLE SUSPICION". FURTHER CIRCUMSTANTIAL EVIDENCE, DEFENDANTS RETALIATORY INTENT IS PROVIDED BY THE FACT CDCR 114 A. WAS LOST DUE TO ADMINISTRATIVE ERROR. (SEE: EXHIBIT. A).

5. DEFENDANTS, HAVE ARBITRARILY PLACED PLAINTIFF ON CSW IN ORDER TO IMPEDE AND RETALIATE AGAINST PLAINTIFF'S LEGITIMATE FIRST AMMENDMENT. CIRCUMSTANTIAL EVIDENCE: DEFENDANTS STATE OF MIND PROVIDED BY THE ABSENCE OF ANY RELIABLE EVIDENCE TO SUPPORT PLACEMENT ON CSW:

a). DEFENDANT, (LT). JOESPH STEWART FAILED TO DOCUMENT "REASONABLE SUSPICION" ON CDCR 114D DURING ISSUANCE TO PLAINTIFF.

b). DEFENDANT, E. BAKER, INTENTIONALLY CALLING PLAINTIFF BY ANOTHER NAME; AND [STATING] IT WAS NOT DEFENDANT'S JOB TO TELL PLAINTIFF ANYTHING.

c). DEFENDANT, (SGT) ENGELLENER DELIBERATELY CONFISCATED

THE MATTRESS ISSUED (BY CORRECTIONAL OFFICER C/O: JONES).

d). DEFENDANT, (SGT) ELLEN REFUSAL AND DISREGARD TO ALLOW PLAINTIFF USE OF THE RESTROOM TIMELY WHEN REQUESTED.

(e). DEFENDANT, (SGT) BUCHANAN DENIAL OF LEGAL PROPERTY AND [STATING] (Lt). JOSEPH STEWART REFUSED TO SPEAK TO PLAINTIFF OF CSW PLACEMENT.

(f) DEFENDANTS DIRECT REFUSAL'S TO RESPOND TO PLAINTIFF'S REQUESTS TO STOP CSW RETENTION AND ALLOW A MEDICAL X'RAY.

(g). DEFENDANT, WARDEN JAMES WALKER FAILURE TO TRAIN AND SUPERVISE SUBORDINATE OFFICER'S AND PREVENT THEM FROM MAINTAINING A ARBITRARY PATTERN OF PLACEMENT/RETENTION ON CSW, WITHOUT ANY "PROBABLE CAUSE" DOCUMENTATION.

(h). PLAINTIFF WAS SUCCESSFUL IN LAWFULLY BEING HOUSED AT CSP/SACRAMENTO (PEOPLE V. ROMO CASE.NO., 04F05789) COURT ORDER TO BE RE-SENTENCE; DEFENDANTS ORDERED PLACEMENT ON CSW.

(i) PLAINTIFF'S ABILITY TO PRESENT ANY VIEWS, DENIAL OF LEGAL WORK SIGNIFICANTLY REDUCED AND IMPEDED WHILE AT COURT CONFINED ON CSW (NOVEMBER 20. 2009).

# FACTS PERTAINING TO DELIBERATE INDIFFERENCE.

1. NOVEMBER 13. 2009, DEFENDANTS ALLOWED TWO PRISONERS (MANUEL CHAVEZ CDCR.NO. V.08690 AND GUILLERMO PANAMENO V.69840) TO BE X-RAYED; DENIED PLAINTIFF ALL X'RAY REQUESTS.

2. PLAINTIFF WAS NOT PLACED ON CSW FOR ANY ALLEGED MISCONDUCT OR "REASONABLE SUSPICION". AND TREATED DELIBERATELY INDIFFERENT.

3. PLAINTIFF'S CO-DEFENDANT (MARCOS AVALOS CDCR.NO. J46795) ARRIVED AT CSP/SAC. ON THE SAME COURT ORDER AND WAS NOT

21

SUBJECTED TO PLACEMENT ON CSW.

4. SUPERVISORY DEFENDANTS ACTIONS/ INACTIONS RESULTED IN THE ARBITRARILY PLACEMENT OF PLAINTIFF ON CSW. (SEE: EXHIBIT. A).

## FACTS
# PERTAINING TO CRUEL AND UNUSUAL PUNISHMENT.

1. DEFENDANTS' DELIBERATELY PLACED PLAINTIFF ON CSW FOR AN EXTENDED PERIOD OF TIME WHILE BRIEFLY OUT TO COURT FOR (8) EIGHT DAYS.

2. DEFENDANTS WERE DELIBERATELY INDIFFERENT TO PLAINTIFF'S LEGITIMATE COURT ORDER REASON FOR ARRIVING AT CSP/SACRAMENTO. SUBJECTED PLAINTIFF TO CSW, WITHOUT THE BASIC HYGEINE AND SANITARY LIVING CONDITIONS FORCED PLAINTIFF TO EAT, SLEEP AND BE RESTRAINED AT ALL TIME (8) EIGHT DAYS WITHOUT WASHING UP, A METAL BUNK TO SLEEP ON WITHOUT LINEN AND LIGHTS ON AT ALL TIMES TO BE OBSERVED BY STAFF AND HOUSED IN COLD CELLS; SEASONAL WEATHER. ALL STAFF WORE JACKETS, THERMALS.

3. PLAINTIFF, WAS COLD AND SUFFERS FROM ASTHMA, DOCUMENTED CHRONIC ARTHRITIS. EXACERBATED BY BEING RESTRAINED AT ALL TIMES TO SLEEP WITH WAIST-CHAINS AND LOCKS ON BACK CAUSED PAIN, DISCOMFORT THROUGHOUT EIGHT DAYS AND AFTER.

4. DEFENDANTS, REFUSAL TO ALLOW PLAINTIFF AN X-RAY ON ALL REQUESTS. SUPERVISORY DEFENDANTS HAVE BEEN ON NOTICE THEY WERE ENFORCING AN UNREASONABLE PLACEMENT OF PLAINTIFF ON CSW, DEFENDANT G. DRUMMOND (ON NOVEMBER 18. 2009) AT ICC, [STATED] HE WOULD SPEAK TO WARDEN, JAMES WALKER.

5. DEFENDANTS FAILED TO FOLLOW ESTABLISHED POLICY AND

22

PROCEDURE, ARBITRARILY PLACING PLAINTIFF On CSW without A "PROBABLE CAUSE". THESE Policies And PRACTICES ARE NOT PROMULGATED AS REGULATIONS And NOT In the California Code Of Regulations. MANY OF THE DEFENDANTS Policies And PRACTICES ARE PUBLISHED In The DEPARTMENTAL Operations Manual, (DOM) And Official Policy ESTABLISHED By the Decision-MAKERS OF the Prison. (SEE: EXHIBIT. A.)

6. DEFENDANTS PLACEMENT OF Plaintiff On CSW, NOVEMBER 13.2009 DENIED X'RAY REQUEST Released Plaintiff On NOVEMBER 21, 2009. without ANY REASONABLE NOTICE And without Following the ESTABLISHED PROCEDURES (DOM. 52050.23.8 AND DOCUMENTATION (DOM. 52050.24).

VI legal Claims.

First Cause Of Action,
First Amendment Access To Courts.

1). Plaintiff Re-alleges And Incorporates By Reference all Previous paragraphs Of this Complaint.

2). Defendants: Joseph Stewart, (Sgt) Buchanan, E. Baker And R. Mendoza violated plaintiff's Rights Guaranteed By the First Amendment Of the U.S. Constitution, In that Plaintiff's placement On csw Is Based wholly OR In part upon plaintiff's legal And legitimate Court Order pursuant To Arrival At CSP/SAC; And Did not Consist Of Any Reasonable Suspicion Related To Any legitimate penological Interest.

Second Cause Of Action.
First Amendment / Retaliation.

3). Plaintiff Re-alleges And Incorporates By Reference all Previous paragraphs Of this Complaint.

4). Defendants: T. Vigra, Joseph Stewart, (Sgt) Buchanan, E. Baker, and R. Mendoza violated plaintiff's First Amendment Rights In that placement On csw constitutes Retaliatory action Taken against plaintiff for the Exercise of plaintiff's constitutionally protected Right To access the Courts; Denial of legal-property. (CCR. Title. 15. sec., 3160). the Retaliatory placement On csw Did not advance Any legitimate penological Intrest.

Third Cause Of Action.
First Amendment And Equal Protection Clause.

5). Plaintiff Re-alleges And Incorporates By Reference all previous paragraphs of this Complaint.

6). DEFENDANTS MATHEW CATE, JAMES WALKER, G DRUMMOND, T. VIQRA, (SGT) ENGELLENER, JOSEPH STEWART, (CPT) KRAMER, AND DOES UNIDENTIFIED.;.. HAVE VIOLATED PLAINTIFF'S FIRST AMENDMENT AND FOURTEENTH AMENDMENT BY NOT PROMULGATING; ENFORCING POLICY AND PROCEDURES INDIFFERENTLY WITHOUT DUE NOTICE. IT IS ESTABLISHED CUSTOM AND POLICY OF DEFENDANTS TO PLACE SOMEONE ON CSW FOR PROBABLE CAUSE. (D.O.M. 52050.21.2.)

a): DEFENDANTS PLACEMENT OF PLAINTIFF ON CSW, NOVEMBER 13.2009 AND DENIED ALL X-RAY REQUESTS; RELEASED PLAINTIFF ON NOVEMBER 21, 2009 WITHOUT ANY REASONABLE NOTICE AND WITHOUT FOLLOWING THE ESTABLISHED PROCEDURES. (D.O.M. 52050.23.8 AND DOCUMENTATION D.O.M. 52050.24.) (b); DEFENDANTS PLACED PLAINTIFF ON CSW INDIFFERENTLY AND ARBITRARLY IN COMPARISION TO PRISONERS ALREADY ON CSW AND PLAINTIFF'S CO-DEFENDANT.

### Fourth Cause Of Action.
CRUEL AND UNUSUAL PUNISHMENT- DELIBERATE INDIFFERENCE OF RETALIATION.

7). PLAINTIFF RE-ALLEGES AND INCORPORATES BY REFERENCE THE ALLEGATIONS CONTAINED IN ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT. 8). DEFENDANTS: JOSEPH STEWART, (SGT) ALLEN, (SGT) ENGELLENER, (SGT) BUCHANON, T. VIQRA, G. DRUMMOND, JAMES WALKER, AND DOES UNIDENTIFIED. SUBJECTED PLAINTIFF TO PLACEMENT AND CSW RETENTION FOR AN EXTENDED (196) HOURS IN RESTRAINTS AND SHACKLES VIOLATED PLAINTIFF'S EIGHT AND FOURTEENTH AMENDMENTS EXPOSING PLAINTIFF TO SUBSTANTIAL PHYSICAL AND MENTAL INJURY DELIBERATELY AS DEFENDANTS FAILED TO FOLLOW

2.

their own Policy And Procedures Of CSW.
(4). Defendants, (Sgt) Allen, (Sgt) Buchanon; Does Unidentified
Denied Plaintiff to use the Bathroom And Privacy Of
all normal Bodily functions while On CSW; (b)(Sgt) Engelleuer
confiscated And denied Plaintiff A Mattress Issued By A
correctional officer Jones Of Lower Rank; (c) Defendants
Each And Individually denied Plaintiff All Sanitary Hygeine
To wash And Clean Himself After Having to use the Rest-
Room To Urinate And Defecate Pursuant To (DOM. 52050.28)
And CCR. Title. 15, Sec. 3004(a); 3061 Personal Hygeine; 3268.2.
use Of Restraints. (See: Exhibit. A)

           Fifth Cause Of Action.
Cruel And Unusal Punishment- Arbitrarly Placement OF
           Plaintiff On CSW.

9). Plaintiff Re-Alleges And Incorporates By Reference All
allegations Contained In All Previous Paragraphs Of this com.
plaint.
10). Defendants, James Walker, G. Drummond, T. Vigra, Joseph
Stewart, Kramer, And Does Unidentifed; Violated Plaintiff's
Eight And Fourteenth Amendment(s) By Arbitrarly And Sub-
jectively Placing Plaintiff On CSW, And Retention for an
Extended Period Of Eight Days.
(a). Defendants Were Deliberately Indifferent By their own
actions and Inactions. Joseph Stewart Never Notified Plaintiff
of CSW while Issuing 114 D. On November 13. 2009; (Cpt) Kramer
Denied Plaintiff Any Hearing and objection OF CSW
Placement Hearing On November 16. 2009; T. Vigra Has Never

Allowed plaintiff to present his views And objections of CSW placement; James Walker continued to retain CSW placement of plaintiff after G. Drummond Notified James Walker on November 18. 2009, plaintiff was only released on November 21. 2009; (b) the loss of CDC 114A pursuant to D.O.M. 52050.25. was lost Due to Administrative error as Documented by Defendants And Appeals Reviewers. (see: Exhibit. A).

Sixth Cause Of Action.

Retaliation- Cruel And Unusual Punishment.

11). Plaintiff Re-Alleges And Incorporates By Reference Allegations Contained In All Previous Paragraphs Of this Complaint.

12). Defendants: Joseph Stewart, T. Vigra, James Walker, Kramer and G. Drummond As Do Does Incidentified Arbitrarily deprived plaintiff of his Eight And Fourteenth Amendment, Rights By Denying plaintiff his Basic Human needs, Of Sanitary Hygeine And medical care For Eight Days On CSW.

(a): Defendants Failed To Allow medical Staff observe And Document plaintiff During All Eight Days. (D.O.M. 52050.25) While Housed In medical clinic Defendants Denied All Requests To Any X-Ray As plaintiff Continuously Stated He Was not In Possession of Contraband; (b) plaintiff's suffer's From chronic Arthritis And Asthma And Was Denied medical care prior to csw And while on csw; prisoner (Panameno) was allowed Everyday medication while on csw, And on One Occassion correctional officer Mandell.

4.

allowed a nurse to take plaintiff's vitals and documented plaintiff's low Blood pressure from taped applied on all appendages legs, arms, stomach which resulted in a discoloration and rash. (c) Defendants denied plaintiff all linen and Bedding while restrained and forced to sleep on metal-Bunk with locks from waist-chains digging into plaintiff's back exacerbated the arthritis. (d) The lights were on at all times (Bright) as plaintiff was only allowed to lay on his back was forced to be subjected to lights and headaches, the weather was cold as plaintiff was not issued linen the doors were open and correctional officers all wore jackets, thermals. (e) Defendants subjected plaintiff to an inescapable environment that was significant and atypical to ordinary prison environments. (see: Exhibit. A).

Seventh Cause Of Action.

Conspiracy.

13). Plaintiff Re-alleges and incorporates by reference the allegations contained in all previous paragraphs of this complaint.

14). Defendants: Joseph Stewart, E. Baker, R. Mendora, (Sgt) Buchanan, T. Sigra, and Does Unidentified as each of them, or some of them conspired and agreed to deprive plaintiff of his constitutionally protected rights as alleged herein, in violation of 42. U.S.C. Sections 1983 and 1985.

(a). Defendants, Joseph Stewart issued plaintiff a 114D of a specific placement in administrative segregation; Kramer reviewed 114D segregation order as issued by J. Stewart. plaintiff believes the discussion beteewn defendants

5.

Joseph Stewart, (SGT) Buchanon, R. Mendoza, E. Baker Resulted in the placement of plaintiff On CSW, without Due Notice. (b) E. Baker called plaintiff by Another name On November 13. 2009 and on November 14. 2009, stated To plaintiff it was Not his job to Tell plaintiff Anything Of Reason For Placement On CSW; (SGT) Buchanon On November 20, 2009 stated if it was upto him he would Release plaintiff From CSW, but stated it was upto J. Stewart; R. Mendoza, E. Baker As Correctional officer's (ISU); (c) Defendant J. Baker Appeals Reviewer on December 23, 2009, stated, Joseph Stewart During An Appeals Review stated ISU, was the One to Request plaintiff's placement On CSW. (d) There Exists No Documentation of T. Vigra Interview And placement Order of CSW (D.O.M 52050. 25); (e) Drummond Allowed the Retention of plaintiff On CSW During classification november 18. 2009, stated He would Notify the Warden James Walker. (See: Exhibit A)

Eight Cause Of Action
Cruel And Unusual Punishment - Deliberate Indifference Of Inhumane Conditions Of CSW placement.

15). plaintiff Re- Alleges And Incorporates By Reference Allegations contained In All previous paragraphs Of this Complaint.

16). Defendants, James Walker, G. Drummond, T. Vigra, J. Stewart, (Sgt) Allen, (SGT) Engellener And Does Unidentified Violated plaintiff's Eight And Fourteenth Amendment's Right By the Deliberate Indifference To plaintiff's physical And Mental Well- Being When Defendants Are And Were Aware Of the Inhumane / Unsanitary Conditions That plaintiff Was Exposed To

6.

ionally Inflicted A Severe physical And Mental Pain/Suffering against plaintiff By placement On csw, In Violation of The Eight And Fourteenth Amendments; And presidential Order (no. 13167)!

(a): plaintiff Was placed In An Inescapable Environment AT The Direction Of Supervising Authorities And Retained On csw For Eight Days While All Correctional Staff From nov. 15. 2009 On Through nov. 21. 2009. Failed to Each; Individually Follow The law And Policy And Procedure; (b) Denied plaintiff All Attempts At An X-ray To Prove he Was Not In possession Of Contraband; (c) other prisoners On Nov. 13. 2009 WERE Allowed A medical X-ray by Defendants, E. Baker, And R. Mendora, Unidentified Authorizing Staff While Ordering plaintiff on csw Denied, An X-ray; (d) Low Ranking Correctional Officers WERE Hesitant To do Anything Out Of Fear Of Reprimand As Correctional officer, Jones Issued plaintiff A Mattress And Was Reprimanded by (Sgt) Engellener As Confiscated Was Told plaintiff Was Not To Be Issued Anything; (e) (Lt), P. Rain Inquired Of plaintiff's placement On csw And Was Told no One Knows Anything And plaintiff Was denied An X-ray. (See: Exhibit. A)

---

1. U.S. Constitution And International law Barring the Use Of Torture And other Cruel, Inhumane, Or degrading Treatment Or punishment As A means Of Obtaining Information, Coercion, And or punishment for Acts-Suspected Acts Committed. (nov. 20. 1994).

For An Extended Period of Eight Days. (a) DEFendants Forced plaintiff to (D.O.M 52050.25) use the Restroom And Eat without Any Sanitary means But to Comply By Procedure of Providing (3) stool Samples to Be Released From csw placement; (b) Defendants moved plaintiff from one Facility csw station To Another that was Previously in use From november 11, 2009 By Prisoner (manuel Chavez) who's Dirty clothing And Urine Container was Left in the cell plaintiff was placed In without Being cleaned; (b) Correctional Officer's Assigned to observe And Document plaintiff Assumed plaintiff was In Possession Of Contraband And would only summon supervising Staff For the Restroom If plaintiff could Assure staff He Would use the Restroom And not Bother the Higher Authority Staff. (c) Sgt. Allen, who was Assigned stated He would not Be Around For csw, Nor Too Be Located. plaintiff Often had to wait For shift change, or An supervising staff willing to Be observant For csw. (See: Exhibit. A)

### Ninth Cause Of Action.
#### Eight And Fourteenth Amendments.

17). plaintiff Re-Alleges And Incorporates by Reference the Allegations contained In all previous paragraphs.

18). Defendants, Joseph Stewart, (Sgt) Buchanon, R. mendoza, E. Baker, T. Vigra, G. Drummond, James Walker, (Sgt) Engellener, (Sgt)Allen, (Cpt) Kramer, And Does Unidentified Have Intention

Tenth Cause Of Action.

Federal Equal Protection.

19). Plaintiff Re-alleges And Incorporates by Reference all previous paragraphs of this complaint.

20). Defendants, Mathew Cate, James Walker, Joseph Stewart, T. Vigra, G. Drummond, (SGT) Buchanon, (SGT) Allen, (SGT) Engellener, R. Mendora, E. Baker, As Do Does Unidentified, Have Denied Plaintiff Equal Protection Of the Law As Guaranteed By the 14th Amendment of the U.S. Constitution By Intentionally Discriminating Against plaintiff Based On The Deliberate Indifference Of csw, placement, (a). Plaintiff Was Discriminated Against At all Times While On csw As Other prisoners Were allowed More Lenient csw placement, (b) plaintiff's Co-defendant Was On the Same Court Order and Was Not placed On csw. (C) plaintiff spoke To Each Defendant Indivually Requesting An x-Ray Pursuant to procedure to Avoid csw placement. Mathew Cate, As Secretary Is Responsible For all policy And procedures Used At Each Institution, the Court Order Was Sent To the Litigation Branch of CDCR To Transport Of plaintiff; James Walker Is Warden And Responsible For The Lawful Operation And Custody Of plaintiff; T. Vigra As Authorizing csw placement Based On No

9.

DOCUMENTED "Reasonable Suspicion" Denied plaintiff an Impartial Hearing; Joseph Stewart And Kramer Denied plaintiff all Due Notice prior to csw placement. (SEE: Exhibit. A).

Eleventh Cause Of Action.
State Equal Protection Clause.

21). Plaintiff Re-alleges And Incorporates By Reference all previous paragraphs of this Complaint.

22). Defendants, J. Stewart, T. Viqra, G. Drummond, James Walker, Mathew Cate, And Does Unidentified Have Denied plaintiff equal protection of law As Guaranteed By Article I. Section 7 and 15; of the California Constitution By Intentionally And Discriminately placing plaintiff On csw without probable cause; (a) (cpt), Kramer who Retained plaintiff On nov. 16. 2009, based On Error Of 114D Issued by (Lt) Joseph Stewart On november 13. 2009. (SEE: Exhibit. A).

Twelvth Cause Of Action.
State Created Liberty Intrest.

23). plaintiff Re-alleges And Incorporates by Reference all previous paragraphs of this complaint.

24). Defendants, Joseph Stewart, Kramer, James Walker, T. Viqra, G. Drummond, Mathew Cate, Have Deprived plaintiff Of his state Created Liberty Intrest protected Rights by the 14th

AMENDMENT OF THE U.S. Constitution, WHEN Defendants:
(a) Failed To Notify Plaintiff BY WAY OF CDCR 114D Form.
SEGreGATion Order OF CSW, PLACEMENT (CCR. Title. 15,. 3336).
JoSeph STEWART Deliberately Failed to Document CSW
PLACEMENT Which Resulted in (CPT) Kramer REVIEW OF

114D on November 16. 2009 For AdminisTRATive SeGReGATion
PLACEMENT; (b) DEFENDANTS Failed TO Document "REASONABLE
SUSPicion" (D.O.M. 52050.19.2 ; 52050.21; 52050.23; And 52050.
23. 8.); (C) (CPT), KRAMER [STATED] to PlainTiFF HE KNEW NoThing
OF CSW, PLACEMENT And Failed to Allow PlainTiFF TO Object
OR APPROVE A X-RAY; to SubmiT Any Evidence For A Full
And ImparTial HEARing; (d) PlainTiFF WAS NEVER In Possession
OF Any ConTRAband. (e) Defendants CLEARLY Failed TO Document
And MAINTAin THE SeGReGATion Order CDCR 114A. (CCR. Title 15,
3344). (SEE: ExhibiT. A).

ThirTeenth CAuSE OF ACTion<br>FEDERAL Due Process.

25). Plaintiff RE-Alleges And Incorporates By Reference All PRE-
vious Paragraphs OF this Complaint.

26). Defendants PLACEMENT OF Plaintiff On CSW Violates
THE Due Process Clause OF THE 14th AMENDMENT To THE
U.S. Constitution In That DEFENDANTS:

(a): Joseph STEWART, Failed To Indicate What Specific Conduct

11.

posed a "Reasonable Suspicion"; (b) plaintiff was placed in
an Inescapable Predicament that violates the Fundamental
Principle of Due Process of law; (c) T.Vigra, Failed to
give plaintiff An Opportunity to present his views
to the the offical making the Decision of csw,
placement; (d) the Institutional Appeals Review process
Failed to Correct the Procedural Defect Absent Any
Due process violation: Defendants, J. Baker; L. Williams;
c. Holstrom And Director Care mathew denied Due
process protection Afforded An Appeal (ccr. title. 15.
3084.1.(a),(d).)   (see: Exhibit. A).

Fourtheenth Cause Of Action.
State Due process.

27). plaintiff Re-alleges And Incorporates By Reference all
previous paragraphs Of this Complaint.

28). Defendants, Kramer, G. Drummond, James Walker And
Does Unidentified, Violated plaintiff's Due process Of law
Article I. Section 7 and 15 Of the California Constitution
By placement and Retention Of csw For (8) Eight Days.
(see: Exhibit. A).
                    Fifteenth Cause Of Action
   Violation Of Mandatory Duties- State Law.
29). plaintiff Re-alleges And Incorporates By Reference all

12.

previous paragraphs of this complaint.

30). Defendants, Joseph Stewart, James Walker, G. Drummond, T. Vigra, E. Baker, R. Mendora, And Does Unidentified; (a) violate California penal code(s) 147 and 673, Imposes a mandatory Duty upon defendants, Each of them to Treat plaintiff fairly and humanely and to protect plaintiff's physical and mental well-being; (b) placement and the retention on csw failed to advance any penological interest; (c) the title 15. sections: 3312 and 3310; 3320; 3335 and 3341.5; Imposes a mandatory duty on defendants each of them to provide plaintiff with procedural protections when alleging misconduct. (see: Exhibit. A).

## Sixteenth Cause Of Action.

Failure to Lawfully Administer, Train And Supervise.

31). Plaintiff Re-Alleges And Incorporates By Reference all previous paragraphs of this Complaint.

32). Defendants, Mathew Cate Secretary of CDCR, Is Responsible for Operation And Statewide policy of csw; James Walker Is Warden of csp/sac. and Responsible for the Institutional procedure; T. Vigra authorized csw placement; Joseph Stewart and (cpt) Dramer And Unidentified Does who followed the placement and Retention of plaintiff.

13.

As supervisory Defendants Responsible for csw placement have a Duty To Establish policy and procedures for the administration of California State prison at Sacramento (csp/sac); To perform and execute their Duties In a manner Consistent with State and federal law: (a) supervisory Defendants were Deliberately Indifferent To the violations Of plaintiff's Rights as Described herein; (b) Defendants Breached their Duties to legally administer the prison, and Train and Supervise subordinates where plaintiff's Rights were violated as a Direct Result of enforcement of Offical Custom and policies; (c) Defendants, Mathew Cate; C. Holstrom; L. Williams, and J. Baker Appeals Reviewers In violation of policy and practices Had actual Constructive Knowledge of the violations By means of Appeal process and did nothing to Prevent and Correct them.

## VII Causation.

33). As a Direct and proximate Cause, Result Of acts and Omissions on the part Of Defendants; plaintiff's has suffered And Continues to suffer General and Special Damages In An Amount To be proven at trial. plaintiff Has no Adequate Or Complete Remedy at law To Redress the wrongs herein.

34). plaintiff Has Been And will Continue to Be irrep-

14.

arably injured by the conduct of Defendants unless the court grants the Declaratory Relief plaintiff seeks.

# EXHIBIT

# A



| Chapter: | 50000<br>CUSTODY/SECURITY OPERATIONS |
|---|---|
| Subchapter: | 52000<br>CUSTODY OPERATIONS |
| Section: | 52050<br>ARREST, SEARCH, AND SEIZURE |

California
Department of
Corrections

OPERATIONS
MANUAL

**52050.21**
**BODY CAVITY**
**SEARCH**

A medical doctor will determine the necessity and procedure for removal of any foreign object secreted within a body cavity. Such removal will only be accomplished by a physician.

**52050.21.2**
**AUTHORITY**
**TO SEARCH**

Authorization to initiate a body cavity search requiring any degree of intrusion must be given by the Warden or his/her designee on duty and must be performed by a physician only after consideration of all information relating to reasonable cause. Notification will be made to the Facility Captain and the respective Associate Warden during business hours and to the AOD during non-business hours.

**52050.25**
**QUARANTINE**

The responsible Facility Captain during business hours, and the AOD during non-business hours, (evening/Saturday/Sunday/holidays), are delegated the authority to place inmates suspected of concealing contraband items within their body cavities on Body Cavity Surveillance status. Notification will be made to the respective Associate Warden during business hours.

Prior to placing an inmate on Body Cavity Surveillance, the inmate will be given an opportunity to voluntarily surrender any suspected contraband concealed on his person. With the inmate's consent, an x-ray may be taken by a qualified x-ray technician to affirm the presence of some specific types of contraband. Consent must be documented on a CDC 128-B, Informational Chrono, and placed in the inmate's central file. If the inmate refuses to voluntarily relinquish the suspected contraband concealed in the body cavity, he will be placed on Body Cavity Surveillance Status.

Inmates who are placed on Body Cavity Surveillance Status will be placed in a C Facility Clinic holding cell. If more than two inmates are on Body Cavity Surveillance Status at the same time, the holding cells in B Facility clinic will be utilized. Equipment necessary for this detail is stored in each Facilities Control. (See Attachment A - List of Equipment)

Prior to actual placement on Body Cavity Surveillance, and at the

**52050.25**
**QUARANTINE**
**(Continued)**

beginning of each shift, the inmate must be evaluated by medical staff and cleared for initial/continued cavity surveillance. The medical staff member will conduct a comprehensive medical assessment of the inmate's pulse, blood pressure, body temperature, and look for signs and symptoms of possible distress. These assessments will be documented on a CDC 7219, Medical Report of Injury or Unusual Occurrence, and placed into the inmate's health record. Vital signs of the inmate will continue to be monitored every two hours by an RN, MTA, or Psychiatric Technician. These will be recorded in the health record. The time, date, and name of staff member who conducted the evaluations will also be noted on the appropriate Segregation Record (CDC 114A).

One Correctional Officer will be assigned to maintain constant visual surveillance of the restrained inmate. At no time will the Correctional Officer leave the individual cell front area or allow the inmate to be unobserved. Supervisory responsibility will be in accordance with the custodial chain of command of the clinic being utilized for the detail.

An inmate CDC 114A will be initiated with the activation of a Body Cavity Surveillance Detail. The Segregation Record will be utilized throughout the detail to document activities such as initial medical evaluation, cell searches, periodic cell searches, bowel movements, evaluations, etc.

A search of the contraband watch cell will be completed prior to placement into the cell, and the search will be documented on the CDC 114A.

Two Officers and a Sergeant will be present when preparing the inmate for surveillance and anytime he is removed from the cell. An unclothed body search of the inmate will be conducted. Upon completion of the search, the inmate will only be allowed boxers (one pair to be worn correctly and the other pair to be worn backwards). The waistband and thighs are to be taped accordingly. The inmate will then be clothed in two jumpsuits. The first jumpsuit will be worn correctly, with the opening in the front. The jumpsuit will then be taped in the thigh, ankle, waist, and elbow or upper arm area. The inmate will wear the second jumpsuit backwards. The collar area will need to be cut to prevent pressure upon the neck. The purpose of the taping is to prohibit the inmate from excreting contraband and moving it around inside the jumpsuit.

Ensure the tape eliminates gaps in the jumpsuit, but does not inhibit circulation. The inmate will then be placed in mechanical restraints (hip

**52050.25**
**QUARANTINE**
**(Continued)**

point waist chains and leg irons), and will be instructed to lie in a supine position face up on the bed. The mechanical restraints will be applied in a way, which will not allow the inmate to reach his rectum.

Upon the notification of the Facility Sergeant and with the assistance of an additional custodial staff member, the inmate will be removed from the cell every two hours. The restraint equipment will be inspected, and the cell will be thoroughly searched.

At the completion of the search, the inmate will be returned to the supine position face up on the bunk, and the appropriate documentation will be entered on the log.

The inmate will be allowed to sit on the edge of the bed to consume his meals. All food will be appropriately searched prior to the inmate taking control of it. During feeding, the inmate's wrist restraints will <u>not</u> be removed; however, they may be adjusted just enough to allow the inmate to eat. **It is imperative that the restraints not be adjusted to the point that the inmate would be able to reach his rectum.** When the meal is completed, the bed and food service items are to be searched, and the inmate is then re-secured. This is to be logged along with any refusals to eat. The inmate is to remain under direct supervision during feeding, and the supervising Officers must remain alert for any attempt by the inmate to remove contraband from his rectum.

A supervisor and one additional officer must be present to assist in the removal of the restraint equipment, jumpsuits and underwear. **The waist restraints and leg restraints will need to be completely removed** to allow the inmate to defecate. Both jumpsuits will need to be removed. The boxers will need to be un-taped. The waist and leg restraints will be placed back on the inmate. The potty chair is to remain within the Body Cavity Surveillance Area. The potty chair is to be searched and lined with two clean clear plastic bags.

If an inmate is in restraints on Contraband Watch or Security Watch in a contraband watch cell or temporary holding cell for contraband or violent behavior, the following circumstances will be observed prior to the Use of Force and the use of Oleoresin Capsicum OC Spray.

If the inmate willfully attempts to break or damage restraints, and where the possibility of violent injury may exist including, self-mutilation, attempted suicide, or where the threat of the Use of Force and/or violence may occur, the observing Officer will activate a personal alarm device and call for assistance.

**52050.25**
**QUARANTINE**
**(Continued)**

If the inmate refuses verbal orders to desist in the damaging/breaking of the restraints after the activation of the alarm system and the call for assistance by the observing Officer, the Officer will utilize OC spray in an attempt to stop the action.

If the action continues and with the arrival of additional correctional staff, one being a supervisor, the supervisor may order correctional staff to enter the cell to physically restrain the inmate. There will be no less than three correctional staff. This will include taking the necessary precautions for blood exposure.

If there is a possibility of blood exposure, Universal Precautions shall be observed. This will include staff getting fully dressed in biohazard suits with gloves and eye protection prior to entering the cell.

If the situation becomes one of pre-planned use of force then a video tape recorder shall be brought to the area for documentation of the use of force and the Pre-Planned Use of Force procedure shall be followed.

The inmate will be restrained and placed in handcuffs or waist restraints and if OC spray is utilized, provided the use of the decontamination shower. This will be followed by an examination by medical staff and a CDC-7219, Report of Injury, form filled out.

After the medical examination and a CDC-7219 is completed, the inmate will be properly restrained and rehoused.

If the inmate requires a change of clothing, the inmate shall be placed into a holding cell in the pedestrian sally port to complete the clothing change, unless this may give the inmate the ability to gain access to areas of possible concealed contraband.

The staff member on the contraband watch, if applicable, and responding staff will complete a CDC-837, Incident Report, and a CDC-115, Rules Violation Report, documenting the incident. The inmate shall be charged for the destruction of any damaged restraints, refusing a direct order, and any other violations of the California Code of Regulations, Title 15.

The toilet tissue used during the bowel movement is to be placed in a separate bag while the inmate is using the potty chair. Before the inmate is allowed to move, the bed and cell are to be completely searched. When the inmate has completed his bowel movement, an unclothed body search will be conducted, and the jumpsuit will be completely searched for contraband.

The inmate will be placed back into the jumpsuit, the legs will be re-taped, and the inmate will be returned to the bed.

**52050.25
QUARANTINE
(Continued)**

The tissue bag, the potty chair, and any contents are to be searched. After the waste material has been searched, the waste material and the toilet paper will be flushed down the toilet. The plastic bag used to line the potty chair will be tied shut and placed inside a regular trash bag, which will be placed into a garbage can as normal trash.

An inmate will remain on Body Cavity Surveillance Status until the contraband has been recovered, or until the inmate has had three (3) bowel movements clear of contraband.

The Watch Commander will only terminate Body Cavity Surveillance with concurrence of the Facility Captain where the inmate was previously housed or the AOD during non-business hours. If extenuating circumstances exist, the Body Cavity Surveillance may be continued; however, a review of each case will be conducted daily by the affected Facility Program Lieutenant to determine whether termination or continuation of the Body Cavity Surveillance is necessary.

When the Body Cavity Surveillance is terminated, the inmate will be given the opportunity to shower, the cell will be searched, and the search documented. All equipment used will be thoroughly cleaned and returned to Facility Control.

Evidence recovered will be processed in accordance with institutional policy and procedure. Involved Officer(s) are responsible for submitting their reports prior to going off duty.

The Program Sergeant of the facility where the Body Cavity Surveillance Detail is conducted shall be notified of the seizure of contraband, and will, in turn, notify the involved facility, which will be responsible for the preparation and timely processing of the incident report.

The CDC 114A will be completed by the last Officer on watch duty and forwarded to the Facility Captain where the contraband watch is being conducted. A copy of this log is to be forwarded to the involved Facility Captain to be included with the incident report.

---

SCOTT KERNAN
Warden

3/22/05
Date

C/S CAPT:cbw

DOM Supplement 52050.21-.25
Revised March 2005                                                    Attachment A

## LIST OF EQUIPMENT FOR BODY CAVITY SURVEILLANCE

Body Cavity Surveillance Kits are located in B and C Facilities' Control and consist of the following:

1.    Latex gloves
2.    Tape
3.    Masks
4.    Toilet paper, Ruler
5.    Felt-tip markers (black and red)
6.    Disinfectant spray, Infectious waste bags
7.    Procedures log, Post Orders
*     Scissors are located in B and C Facilities Lieutenant's office or the Clinic


Restraint equipment to be utilized is located in B and C Facilities' Control.  The Restraint Kits numbered one through six consist of the following:

1.    Waist chain with attached handcuffs
2.    Leg irons
3.    Lead chain
4.    One pair of handcuffs
5.    Cuff and restraint key
6.    Four #7 Restraint locks

Proof Of Service.

(RE: Ezequiel Romo      civ. Case no. 2:11 CV 02898 DAD.)

I am a Resident In The County Of Kern, California
I am Over the age Of 18 years And a Party to the
within Cause of action. my address Is:

Ezequiel Romo K·388661
        P.O. Box 1906
      Tehachapi, Ca 93581.

On July 10th, 2012. I Served The within civil
complaint (amended) 42. usc. 1983. placing a True; And
One copy Enclosed In a Sealed Envelope addressed
As follows:      Clerk Of The U.S. District Court
                Eastern District of California.
            501 (I) Street. Room 4·400.
            Sacramento California 95814.

I, Declare Under penalty Of Perjury that The
Foregoing Is True And Correct, Executed At Tehachapi
California. On 10th, July, 2012. Ezequiel Romo

                    Ezequiel Romo
                    In Pro Se.

July 10th. 2012.