1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   EZEQUIEL ROMO,                              No.  2:11-cv-2898 DAD P

12                 Plaintiff,

13        v.                                     ORDER & FINDINGS AND
                                                 RECOMMENDATIONS
14   MATTHEW CATE, et al.,

15                 Defendants.

16

17        Plaintiff is a state prisoner proceeding pro se with an action for alleged civil rights

18   violations, pursuant to the Civil Rights Act, 42 U.S.C. § 1983.  In his complaint plaintiff alleges

19   that his placement on contraband surveillance watch (CSW) at California State Prison-

20   Sacramento (CSP-Sac) abridged his rights under the First, Eighth and Fourteenth Amendments.

21   He has named numerous correctional officials with the California Department of Corrections and

22   Rehabilitation (CDCR) as defendants.

23        The defendants have filed a motion to dismiss under Federal Rule of Civil Procedure

24   12(b)(6), on three grounds:  (1) plaintiff has no viable claim against the appeals coordinators,

25   defendants J. Baker, Williams and Holstrom, for their participation or decisions in the prison

26   grievance process; (2) plaintiff has no viable claim against defendant Walker, the warden at CSP-

27   Sac, because he has failed to allege that the warden personally participated in any of the alleged

28   constitutional violations; and (3) plaintiff has no viable claim against defendants Stewart,

                                                 1

1    Mendoza, E. Baker, Virga, Montez, Hood, Engellenner, Buchanan, Kramer, Ellen[1] or Drummond

2    "because Plaintiff's placement on CSW in and of itself did not violate the First, Eighth or

3    Fourteenth Amendments, and Defendants are entitled to qualified immunity with respect to [the]

4    Eighth Amendment claim."  (Motion (Doc. No. 47) at 2.)

5    I.   Plaintiff's allegations

6          In his complaint plaintiff alleges more specifically as follows.  On November 13, 2009,

7    the plaintiff arrived at CSP-Sac en route to a re-sentencing hearing in state court.  (Fifth Amended

8    Complaint (Doc. No. 21) ¶ 41.)  Soon after his arrival he was stripped and subjected to a visual

9    body cavity inspection and "wanded by a metal detector [while] awaiting to be housed in

10   administrative segregation."  (Id.)  After that, plaintiff overheard a "superior-rank[ing]" officer

11   say "plaintiff was not going to [administrative segregation] just yet[.]"  (Id. at ¶ 45.)  Instead two

12   officers were assigned to escort plaintiff to contraband surveillance watch despite plaintiff's

13   protests that he carried no contraband and without granting his request for an x-ray.[2]  (Id. at 46.)

14   Defendant Buchanan told plaintiff that he "could probably have plastic or some kites that won't

15   show on an x-ray[.]"  (Id. at ¶ 49.)

16         Once he was placed on CSW, plaintiff wore two pair of underwear duct taped around his

17   legs and waist, two t-shirts duct taped around his arms, waist and torso, and two jumpsuits taped

18   at his ankles, thighs, waist and arms.  (Id. at ¶ 58.)  Plaintiff was also equipped with waist-chain

19   restraints.  (Id.)  He was put in a cold cell "without a toilet or water and a mattress and all basic

20   hygiene."  (Id.)  An Officer Jones issued plaintiff a mattress but defendant Engellener confiscated

21   it within five minutes.  (Id. at ¶ 60.)

22   /////

23

24   _____

     [1]  The operative complaint names a defendant "Allen;" the memorandum in support of the motion
25   to dismiss states that the correct identity of that defendant is Sergeant Ellen.  (Defendants' Brief
     (Doc. No. 47-1) at 7.)

26
     [2]  Contraband surveillance watch in CDCR facilities is "a special temporary confinement used to
27   determine whether an inmate has ingested or secreted contraband in his digestive tract and, if so,
     to recover it."  Johnson v. Sisto, No. 2:08-cv-1609 KJM KJN P, 2012 WL 162234 at *1 n.2 (E.D.
28   Cal. May 8, 2012) (internal quotation marks and citation omitted).

Throughout his complaint, plaintiff states he asked different correctional officers why he had been placed on CSW.  All of them said they did not know or simply refused to say.  However, after plaintiff told Officer Herriera that he was at CSP-Sac because he had been successful on appeal and was due to be re-sentenced, Herriera stated, "[N]ow you know the reason why you're on CSW." (Id. at ¶ 63.)  Thus plaintiff states his "belief [that] the reason for [his] subjective placement on CSW [was] retaliati[on] for . . . legitimate access to [the] courts and [to] interfere with his court order while placed on CSW; to frustrate plaintiff without his legal work[,] as [there was] no legitimate penological interest for CSW." (Id. at ¶ 64.)

On November 16, 2009, plaintiff "was able to use the restroom," which revealed no contraband. (Id. at ¶ 66.)  At some point thereafter, he was re-assigned to another CSW cell, this time on the prison's B-Facility.[3]  When he arrived there, "the new cell was not clean or disinfected[,] with dirty linen still in the cell and [a] bottle filled with urine." (Id. at ¶ 69.)  Plaintiff was often required to wait to use the bathroom until "any willing supervisor" was available to oversee the process. (Id. at ¶ 73.)

On November 20, 2009, defendant Buchanan told plaintiff he "was scheduled for court and would be transported as is on CSW; no shower; no shave and returned to CSW after court." (Id. at ¶ 86.)  Plaintiff asked Buchanan for his legal papers to prepare for court but that request was denied. (Id. at ¶ 87.)  The next day, November 21, plaintiff was informed he would be leaving CSW. (Id. at ¶ 93.)  On November 23, he requested his legal papers again, this time from Officer Almodovar.  "Almodovar stated he spoke to [Captain] Stewart and was told plaintiff had his legal work." (Id. at ¶ 94.)  According to plaintiff, defendants withheld his legal materials in retaliation for his successful appeal of his sentence.[4] (Id. at ¶ 102.)

////

---

[3]  Plaintiff's complaint appears to put the reassignment to B-Facility at the sixth day of his confinement to CSW, or roughly November 19, 2009. (Id. at ¶ 69.)

[4]  Plaintiff also claims that defendant Buchanan told plaintiff that he had "personally called Tehachapi [the prison where plaintiff would return after his re-sentencing] to let them know to place plaintiff on CSW upon his arrival, and then laughed, walking away." (Id. at ¶ 103.)  Plaintiff was not put on CSW when he returned to Tehachapi. (Id. at ¶ 104.)

1   Plaintiff remained on CSW for eight days.  (<u>Id.</u> at ¶ 81.)  He claims conditions on CSW

2   "exacerbated the chronic arthritis and asthma plaintiff suffers from, [which was] documented

3   prior to CSW placement."  (<u>Id.</u>)  He further claims that "[d]efendants denied plaintiff access to

4   medical care while housed . . . on CSW."  (<u>Id.</u> at ¶ 82.)  However, plaintiff does describe in his

5   complaint one occasion during the eight days he was on CSW in which a nurse took his vital

6   signs and administered anti-fungal cream.  (<u>Id.</u> at ¶¶ 83-85.)  Plaintiff alleges that he saw a doctor

7   after his release from CSW and was

8
9   told nothing could be done for the pain and discomfort suffered on
    CSW, as it was exacerbated from the shackles and restraints due to
    arthritis and lack of movement.  The physician issued Tylenol and
    anti-fungal cream for the rash and bruising and discoloration [from]
10  tape pulled from appendages.

11  (<u>Id.</u> at ¶ 99.)

12  II.   <u>Plaintiff's claims</u>

13   Liberally construed, the complaint makes several claims derived from plaintiff's

14  placement on CSW and his subsequent attempt to obtain relief through CDCR's administrative

15  prison grievance process.  Plaintiff claims that:  (1) defendants J. Baker, Williams and Holstrom,

16  the officials assigned to his inmate appeals, "denied all meaningful review" of his claims, in

17  violation of his right to due process under the Fourteenth Amendment (<u>Id.</u> at ¶ 116); (2)

18  defendants Stewart, Buchanan, Mendoza and E. Baker "conspired to place plaintiff on CSW" in

19  retaliation for his successful appeal of his sentence and "to frustrate and impede his scheduled

20  court appearance," in violation of the First Amendment (<u>Id.</u> at ¶ 119); (3) defendants Stewart,

21  Buchanan, Engellener, Mendoza, E. Baker, Montez and Hood withheld plaintiff's legal materials

22  without any legitimate penological purpose and in retaliation for his exercise of his rights under

23  the First Amendment (<u>Id.</u> at ¶¶ 88, 129, 139); (4) similarly situated inmates were allowed an x-

24  ray, access to proper hygiene and clean clothing as part of their placement (or non-placement) on

25  CSW, rendering the denial of the same provisions to him a violation of the Equal Protection

26  Clause (<u>Id.</u> at ¶ 152); (5) deliberate indifference to his serious medical needs while on CSW (<u>Id.</u>

27  at ¶81-82, 146); (6) conditions of confinement on CSW violated the Eighth Amendment

28  prohibition against cruel and unusual punishment (<u>Id.</u> at ¶¶ 70, 75, 123, 133-34, 143, <u>et al.</u>); (7)

4

his placement on CSW occurred without the due process required by the Fourteenth Amendment or where there are liberty interests created by state law (Id. at ¶ 117, 149); (8) violations of the California Constitution and other provisions of state law (Id. at ¶¶ 151, 157; also pages 44-45 (Fourteenth and Fifteenth Causes of Action)); (9) failure to train and supervise certain defendants. (Id. at ¶ 79.)

III.   Analysis

Federal Rule of Civil Procedure 12(b)(6) requires a court to dismiss a claim if it fails to state a basis on which relief could be granted.  A court considering whether to grant a motion to dismiss under Rule 12(b)(6) must accept the allegations of the complaint as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007), and construe the complaint in the light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  Pro se pleadings are held to a less stringent standard than those drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).  Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Furthermore, a claim upon which the court can grant relief must have facial plausibility.  Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  Attachments to a complaint are considered to be part of the complaint for purposes of deciding a motion to dismiss under Rule 12(b)(6).  Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

A.   Claims based on the prison administrative appeals process

Defendants J. Baker, Williams and Holstrom are correct in arguing in support of their motion to dismiss that their "action in responding to Plaintiff's appeals, alone, cannot give rise to any claims for relief" under 42 U.S.C. § 1983.  (Defendants' Brief (Doc. No. 47-1) at 13.) "[I]nmates lack a separate constitutional entitlement to a specific grievance procedure."  Ramirez

1   v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003). "Therefore, plaintiff cannot state a cognizable civil

2   rights claim against defendants ... based solely on their roles in denying a prison grievance."

3   Johnson v. Hill, No. 2:10-cv-2522 KJN P, 2010 WL 4386722 at *2 (E.D. Cal. Oct. 28, 2010). All

4   claims based on any defendant's participation in the prison grievance process should therefore be

5   dismissed.

6          B.   Claims against defendant Walker, as Warden of CSP-Sac

7          Defendant Walker, the warden at CSP-Sac, argues that all claims brought against him

8   must be dismissed because (1) the complaint alleges a claim of failure to train or supervise

9   against him "without any further explanation" and (2) the plaintiff otherwise proceeds on a theory

10  of respondeat superior as a basis of Walker's liability. (Defendant's Brief at 14.) As to the latter

11  point, defendant Walker says the complaint "only alleges that Defendant Drummond told Plaintiff

12  that he would speak with Defendant Walker about Plaintiff's placement on CSW." (Id. at 15.)

13  He maintains that there is "no allegation that Defendant Walker personally participated, directed,

14  or knew of any violations or failed to act." (Id. at 15.)

15         Indeed it is well established that a state actor in a supervisory position cannot be held

16  individually liable in a civil rights action for the constitutional violations of a subordinate. See

17  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). To state a claim of individual liability

18  against a supervisor, a plaintiff must aver some causal connection between the supervisor's

19  conduct and the violation. See Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir.

20  1991). A claim may lie against a supervisor on a theory of official liability if he "implements a

21  policy so deficient that the policy itself is a repudiation constitutional rights and is a moving force

22  of the constitutional violation." Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal

23  citations and quotation marks omitted).

24         Defendant Walker is correct that a subordinate's merely informing him of plaintiff's

25  placement on CSW does not implicate him in any direct way with constitutional violations that

26  might have happened there. He is right too that none of the alleged acts of other defendants can

27  be imputed to him for purposes of liability under § 1983. The only possibility of recovery against

28  Walker, therefore, lies in the viability of plaintiff's claim that Walker failed to train or supervise

1   the officers who had direct involvement in the constitutional violations alleged in the complaint.

2   　　　Inadequate training or supervision may be the basis of official liability (or "municipal

3   liability") under § 1983 "'where the failure to train amounts to deliberate indifference to the rights

4   of persons with whom the police [or correctional officers] come into contact.'"  Flores v. County

5   of Los Angeles, --- F.3d ---, ---, No. 12-56623, 2014 WL 3397219 at *2 (9th Cir. July 14, 2014)

6   (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)).  "As to an official in his individual

7   capacity, the same standard applies – [the plaintiff] must show that [the defendant] was

8   deliberately indifferent to the need to train subordinates, and the lack of training actually caused

9   the constitutional harm or deprivation of rights."  Id. (citing Connick v. Thompson, --- U.S. ---,

10  ---, 131 S. Ct. 1350, 1358 (2011)).  This standard requires a plaintiff to "allege facts to show that

11  [the government agency and the individual officer] 'disregarded the known or obvious

12  consequence that a particular omission in their training program would cause [governmental]

13  employees to violate citizens' constitutional rights.'"  Id. (citing Connick, 131 S. Ct. at 1360).

14  　　　In Young v. City of Visalia, 687 F.Supp.2d 1141, 1149 (E.D. Cal. 2009), the district court

15  dismissed a failure-to-train claim because it ran afoul of Iqbal's prohibition against "conclusory,

16  'threadbare' allegations that merely recite the elements of a cause of action[.]"  The complaint in

17  Young alleged deliberate indifference "without identifying the training and hiring practices, how

18  those hiring practices were deficient, and without an identification of the obviousness of the risk

19  involved."  Id. at 1150.  The same is true of plaintiff's complaint in this action.  Plaintiff's

20  allegations are nowhere specific about the training Warden Walker oversaw, the deficiencies

21  therein, or how obvious the risks flowing from those deficiencies must have been.  The most

22  detail the complaint provides is an allegation that Warden Walker failed to "prevent [his

23  subordinates] from a pattern of retaliatory and unconstitutional harassment" – in other words, he

24  failed to prevent a constitutional violation.  That is the sort of conclusory allegation that falls

25  short under Rule 12(b)(6) and Iqbal.

26  　　　Plaintiff's claim against defendant Warden Walker for his alleged failure to train or

27  supervise therefore should be dismissed.

28  /////

1        C.   Claims against all other defendants

2            The remaining defendants – Stewart, Mendoza, E. Baker, Virga, Montez, Hood,

3    Buchanan, Kramer, Ellen, Engellener and Drummond – move for dismissal on numerous

4    grounds:  (1) plaintiff's claims of retaliation are conclusory; (2) defendants advanced a legitimate

5    penological goal in placing plaintiff on CSW for reasonable suspicion of carrying contraband; (3)

6    plaintiff has failed to allege the defendants had the requisite state of mind in allowing the alleged

7    violations to occur; (4) plaintiff has no claim for inadequate medical care because he received

8    medical attention while he was on CSW; (5) defendants are entitled to qualified immunity; (6)

9    plaintiff has failed to state that he is a member of a protected class for purposes of his equal

10   protection claim; (7) plaintiff's right to equal protection did not require an x-ray in lieu of being

11   placed on CSW; and (8) plaintiff has no liberty interest in avoiding CSW.  The court can address

12   two of these arguments quickly.  (See Defendants' Brief at 15.)

13           First, defendants are correct that plaintiff's appointment with a nurse, described in his

14   complaint, and his failure to allege that he was suffering from a serious medical need or denied

15   medical care at other times during his placement on CSW eliminates the possibility of any

16   plausible claim for inadequate medical care or attention in violation of the Eighth Amendment.

17           Second, defendants are also correct that plaintiff has stated no cognizable equal protection

18   claim here.  "To state a § 1983 claim for violation of the Equal Protection Clause a plaintiff must

19   show that the defendants acted with an intent or purpose to discriminate against the plaintiff based

20   upon membership in a protected class."  Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th

21   Cir. 2005) (internal quotation marks and citations omitted).  Nothing in plaintiff's complaint

22   suggests that he was treated differently by defendants because of his membership in a protected

23   class.

24           Accordingly, plaintiff's claims for constitutionally inadequate medical care and violation

25   of the Equal Protection Clause should be dismissed.[5]

26   /////

27   _____

28   [5]  Because there is no allegation that plaintiff belongs to a protected class, the court need not
     address the denial of plaintiff's request for an x-ray as part of any possible equal protection claim.

1        1.  Plaintiff's claim for unconstitutional conditions of confinement

2        Under the Eighth Amendment's prohibition on cruel and unusual punishment, prison

3   "[c]onditions must not involve the wanton and unnecessary infliction of pain," nor may they

4   effect "serious deprivation of basic human needs."  Rhodes v. Chapman, 452 U.S. 337, 347

5   (1981).  Prison officials therefore have a constitutional duty to provide and maintain humane

6   conditions of confinement – adequate food, clothing, shelter and medical care – and they must

7   take reasonable measures to guarantee inmates' safety.  Hudson v. Palmer, 468 U.S. 517, 526-27

8   (1984).  "The Constitution 'does not mandate comfortable prisons,' but neither does it permit

9   inhumane ones[.]"  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes, 452 U.S. at

10  349).  "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are

11  not unconstitutional.  To the extent that such conditions are restrictive and even harsh, they are

12  part of the penalty that criminal offenders pay for their offenses against society."  Rhodes, 452

13  U.S. at 347.  At the same time, prison conditions must provide at least the "minimal civilized

14  measure of life's necessities."  Id.

15       A prisoner who alleges an Eighth Amendment violation must plead and ultimately prove

16  two elements.  "First, the deprivation must be, objectively, 'sufficiently serious.'"  Farmer, 511

17  U.S. at 832 (citation omitted).  Second, "a prison official must have a sufficiently culpable state

18  of mind.  In prison-conditions cases that state of mind is one of deliberate indifference to inmate

19  health and safety."  Id. at 834 (internal quotation marks and citations omitted).  "Deliberate

20  indifference" means a defendant knew about and ignored an excessive risk to inmate health and

21  safety.  See Grenning v. Miller-Stout, 739 F.3d 1235, 1239 (9th Cir. 2014).  "Whether an official

22  possessed such knowledge is a fact subject to demonstration in the usual ways, including

23  inference from circumstantial evidence.  Knowledge of risk of harm can be inferred where that

24  risk is obvious, but prison officials are not liable if they respond reasonably to that risk."  Id.

25  (internal quotation marks and citations omitted).

26       Here, plaintiff's complaint either explicitly alleges defendants were deliberately

27  indifferent, or, where it is not so explicit, its allegations give rise to reasonable inferences that the

28  defendants knew about allegedly unsafe and unhealthy conditions on CSW and did not respond

9

1   thereto.  See, e.g., Fifth Am. Compl. at ¶¶ 70, 133.  Defendants' contention that plaintiff has

2   failed to aver the requisite state of mind with regard to his conditions is therefore misplaced.

3                              a.  Qualified immunity

4            Defendants claim they are entitled to qualified immunity with respect to plaintiff's Eighth

5   Amendment claim based upon his alleged unconstitutional conditions on CSW.  They argue that

6   even if plaintiff establishes he suffered a deprivation of his constitutional rights while he was on

7   CSW, those rights were not clearly established law at the time of the alleged violations.

8            Governmental officials performing discretionary functions generally are shielded from

9   liability in their individual capacities if the challenged conduct did not violate clearly established

10  statutory or constitutional rights of which a reasonable person would have known.[6]  Harlow v.

11  Fitzgerald, 457 U.S. 800, 818 (1982).  In determining whether a governmental officer is entitled

12  to qualified immunity, a court considers two questions.  One asks whether the facts alleged,

13  viewed in the light most favorable to the party asserting the injury, show the officer's conduct

14  violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  A negative answer

15  ends the analysis, with qualified immunity protecting the defendant from liability.  Id.  If a

16  constitutional violation occurred, a court also asks "whether the right was clearly established."

17  Id.  "If the law did not put the [defendant] on notice that [his] conduct would be clearly unlawful,

18  summary judgment based on qualified immunity is appropriate."  Id. at 202.  The inquiry into

19  whether a right was clearly established "must be taken in light of the specific context of the case,

20  not as a broad general proposition."  Id. at 201.  "[T]he right the official is alleged to have

21  violated must have been 'clearly established' in a more particularized, and hence more relevant,

22  sense:  The contours of the right must be sufficiently clear that a reasonable official would

23  understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640

24  (1987).  A district court may decide the order of addressing the two prongs of its qualified

25  immunity analysis in accordance with fairness and efficiency and in light of the circumstances of

26  a particular case.  See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

27  _____

28  [6] Qualified immunity is not available to defendants sued in their official capacities.  Hallstrom v. City of Garden City, 991 F.2d 1473, 1482 (9th Cir. 1993).

1       In <u>Chappell v. Mandeville</u>, 706 F.3d 1052 (9th Cir. 2013), the Ninth Circuit held that

2  correctional officers involved in a California inmate's week-long placement on CSW in 2002

3  were entitled to qualified immunity.  Many of the procedures employed in that case were the

4  same as what this plaintiff allegedly experienced:  double clothing, waist chains, no mattress,

5  constant lighting and closely monitored bodily functions.  The Ninth Circuit in <u>Chappell</u> did not

6  directly answer the question of whether those conditions violated the Eighth Amendment,

7  however, because "at a minimum, the law was not clearly established [in 2002] that the

8  contraband watch was unconstitutional[.]"  <u>Id.</u> at 1059.  The Ninth Circuit concluded that the

9  traditional second prong of qualified immunity – that a reasonable official in that position in 2002

10  would not have been on "fair notice" that the CSW conditions alleged were unconstitutional –

11  protected the defendants from liability in that case.  <u>Id.</u> at 1059.

12       This plaintiff was assigned to CSW in November 2009.  At that time, the <u>per se</u>

13  constitutionality of CSW as it is practiced in California state prisons remained unsettled.[7]

14  However, the ambiguous constitutional status of CDCR's contraband surveillance watch does not

15  necessarily mean that the defendants here are entitled to qualified immunity no matter what

16  plaintiff alleges about his experience on CSW.  Indeed, as the undersigned has explained in

17  another CSW case,

18 

19 

20 

21 

22 

23 
            [p]laintiff is not [only] alleging that the . . . contraband surveillance watch policy is unconstitutional.  He alleges that his Eighth Amendment right to be free from cruel and unusual punishment was violated <u>by the particular watch conditions he was subjected to under the circumstances of his case</u>.  He alleges that after an unclothed body search and the use of a hand held metal detector failed to detect contraband on his person, there was not reasonable cause to subject him to the contraband watch.  Moreover, he alleges that he was denied access to alternate means (x-ray or use of a laxative) of establishing that he was not hiding contraband on his

24 

25 

26 

27 

28 
_____

[7]  Noting the Ninth Circuit's holding in <u>Chappell</u>, District Judge Charles R. Breyer of the U.S. District Court for the Northern District of California has held that correctional officers sued for their involvement in a CSW placement in 2010 were entitled to qualified immunity, stating that the court had "not discovered any CSW cases that would have provided any further clarity to a reasonable officer in 2010 – the time plaintiff was placed in CSW."  <u>Diaz v. Cate</u>, No. C 11-3459 CRB (PR), 2013 WL 4479262 at *5 (N.D. Cal. Aug. 20, 2013). <u>See also</u> <u>Uvalles v. Jaquez</u>, No. C 09-5221 RMW (PT), 2013 WL 1283390, at * 7-8 (N.D. Cal. Mar. 27, 2013) (same as to 2008 – 2009)

person.  Finally he alleges that he was subjected to inhumane conditions while on contraband watch, far in excess of those authorized by the written . . . contraband surveillance watch policy.

Hignite v. Felker, No. CIV S 07-0732 GEB DAD P, 2008 WL 2782854 at *8 (E.D. Cal. July 14, 2008) (emphasis added).  Like the plaintiff in Hignite, plaintiff here alleges in his complaint that he was kept in unconstitutionally unsanitary conditions, including (but not limited to) the allegation that he was forced to eat with his bare hands without washing during his entire assignment to CSW, even after he defecated.  In concluding that the plaintiff's complaint in Hignite was viable under Rule 12(b)(6), the undersigned repeated the standard that "[t]he more basic the need, the shorter the time it can be withheld.  Substantial deprivations of . . . sanitation for four days, for example, are sufficiently serious to satisfy the objective component of an Eighth Amendment claim."  Id. at *6 (quoting Lira v. Cal. Dep't of Corrections, No. C 07-1447 SI (pr), 2007 WL 2221019 at *3 (N.D. Cal. July 31, 2007)).[8]  Although there is no hard-and-fast threshold for how long it takes a particular deprivation to become unconstitutional, the plaintiff in Hignite had alleged he went without basic sanitation for eighty-four hours, or three-and-a-half days.  The undersigned concluded that was close enough to the four-day example of unsanitary conditions that were found to be unconstitutional in Lira.  In this case, plaintiff alleges his unsanitary conditions lasted for a far longer eight days.

Viewing the operative complaint in the light most favorable to the plaintiff, then, the court does not find that defendants are entitled to qualified immunity at this stage of the case.  First, and in keeping with the traditional order of a qualified immunity analysis (see Pearson, 555 U.S. at 236), the plaintiff has described unconstitutional conduct.  He alleges in adequate detail in his complaint that he was placed in excessively unsanitary conditions for eight days – an allegation that, if proved, would support the "objective component" claim under the Eighth Amendment.  See Farmer, 511 U.S. at 834; Hoptowit v. Spellman, 753 F.2d 779, 783 (9th Cir. 1985).  Furthermore, as stated above, plaintiff meets the "subjective component" of an Eighth

---

[8] The plaintiff in Lira alleged that he sat in an unsanitary CSW cell for three days.  Lira, 2007 WL 2221019 at *1.  The district court denied a motion to dismiss the plaintiff's Eighth Amendment claim "for putting and keeping [plaintiff] in the filthy contraband cell for three days based on the known false evidence[.]"  Id. at *3.

1    Amendment claim by alleging the defendants had the requisite state of mind – that is, they were

2    deliberately indifferent to those unconstitutional conditions.  Farmer, 511 U.S. at 834.  Indeed the

3    allegations are such that any officer who observed plaintiff during his stay on CSW must have

4    known at some point that conditions were unsanitary.  Such an inference is enough to survive a

5    motion to dismiss brought under Rule 12(b)(6).  "[A] factfinder may conclude that a prison

6    official knew of a substantial risk from the very fact that the risk was obvious."  Farmer, 511 U.S.

7    at 842.

8            Second, it had long been established by the time of the alleged violation in this case that

9    excessively or prolonged unsanitary conditions in prison are unconstitutional.  See Anderson v.

10   County of Kern, 45 F.3d 1310, 1314 (9th Cir. 1995) (stating "a lack of sanitation that is severe or

11   prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment");

12   Hoptowit, 753 F.2d at 783 ("The health hazard caused by vermin at the penitentiary is

13   exacerbated by the plumbing and ventilation inadequacies.  Such vermin infestation, properly

14   considered in the light of unsanitary conditions such as standing water, flooded toilets and sinks,

15   and dank air, is an unnecessary and wanton infliction of pain proscribed by the Eighth

16   Amendment.")  Again, even if courts are still assessing the constitutionality of CSW procedures

17   generally, that uncertainty does not immunize every correctional officer for every act or omission

18   that occurs in furtherance of carrying out that procedure.  "[T]he simple fact that no other court

19   has yet found CSW unconstitutional does not mean that every application of that policy . . . will

20   be permissible nor [does it] prevent this court from considering whether the policy itself passes

21   constitutional muster."  Elbert v. Swarthout, No. 2:11-cv-1154 GEB EFB P, 2012 WL 3728789 at

22   *3 (E.D. Cal. Aug. 24, 2012).  Here, plaintiff alleges an application of CSW policy that, if true,

23   violated well established constitutional law.  That allegation suffices to survive a motion to

24   dismiss brought on qualified immunity grounds.

25           Accordingly, to the extent defendants' motion to dismiss plaintiff's claim that he was

26   subjected to unconstitutional conditions of confinement is based on qualified immunity grounds,

27   the motion should be denied.

28   /////

13

1             2.  <u>Plaintiff's retaliation claim</u>

2          Retaliation by a state actor for the exercise of a constitutional right is actionable under §

3      1983 even if the act would have proper or justified under different circumstances.  <u>See</u> <u>Mt.</u>

4      <u>Healthy City Bd. of Education v. Doyle</u>, 429 U.S. 274, 283-84 (1977).  In the prison context, a

5      plaintiff who brings a retaliation claim must allege and show:  (1) that a state actor took some

6      adverse action against him (2) because of (3) the prisoner's protected conduct, and that such

7      action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

8      reasonably advance a legitimate correctional goal.  <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68

9      (9th Cir. 2005).

10         Here, plaintiff alleges he was placed on CSW in retaliation for his successful appeal of his

11     criminal sentence.  He alleges that after he told Correctional Officer Herriera that he was at CSP-

12     Sac because he had been successful on appeal and was on his way to court to be re-sentenced,

13     According to plaintiff, Herriera replied, "[N]ow you know the reason why you're on CSW."  (<u>Id.</u>

14     at ¶ 63.)  Thus plaintiff alleges his "belief [that] the reason for [his] subjective placement on CSW

15     [was] retaliati[on] for . . . legitimate access to [the] courts and [to] interfere with his court order

16     while placed on CSW; to frustrate plaintiff without his legal work[,] as [there was] no legitimate

17     penological interest for CSW."  (<u>Id.</u> at ¶ 64.)

18         These allegations, particularly the statement attributed by plaintiff to Officer Herriera,

19     suffice to state a cognizable claim.  They are not, as defendants contend, conclusory.  However,

20     defendants are correct that plaintiff has failed to allege facts explaining "how each Defendant

21     took an adverse action against Plaintiff because of his court appearance."  (Defendant's Brief at

22     16.)  Indeed it is implausible that numerous defendants "conspired" to put plaintiff on CSW when

23     that decision could only have come from a single official.  (<u>See</u> Fifth Am. Compl. at ¶ 119.)  It is

24     incumbent on the plaintiff, therefore, to identify the state actor who allegedly abused his authority

25     /////

26     /////

27     /////

28     /////

1   by assigning plaintiff to CSW in an act of retaliation.[9]  And in fact, the plaintiff has done that, or

2   at least he has narrowed it down:  the operative complaint specifically avers that "the [CSW]

3   placement was authorized by T. Virga[,]" (id. at ¶ 137), and then, in apparent contradiction, that

4   another defendant "said it was Stewart's call."[10]  (Id. at ¶ 139.)  These conflicting allegations are

5   not dispositive, at this point.  Plaintiff need not be certain who ordered him onto CSW at this

6   stage of the litigation.  The accusations are both plausible insofar as the decision could only have

7   been made by an official with authority to make it, and defendants Virga and Stewart appear to

8   have been in that sort of role, according to the allegations of plaintiff's complaint.  Moreover,

9   paring it down to one of two supervisory officers, as plaintiff has effectively done in his

10  complaint, renders implausible the allegation of a conspiracy among numerous other defendants

11  to put plaintiff on CSW.

12        The defendants also contend that officials had a reasonable suspicion to place plaintiff on

13  CSW, a justification that eliminates any possibility of recovery for retaliation.  That argument,

14  however, is premature: it cannot be resolved on the pleadings.  That potential defense is fact-

15  sensitive and is appropriately reserved for resolution on a motion for summary judgment.

16  Moreover, it is well established that a facially legitimate security measure, such as a search or a

17  confiscation, may be actionable under the Civil Rights Act if it is carried out for an improper

18  motive, such as retaliation for engaging in constitutionally protected conduct.  See Rizzo v.

19  Dawson, 778 F.2d 527, 532 (9th Cir. 1995).  The burden is on the plaintiff to plead and eventually

20  prove the absence of any legitimate penological purpose in the act that he alleges was retaliatory.

21  See Pratt v. Rowland, 802, 806 (9th Cir. 1995).  A plaintiff may support a claim of retaliation

22  _____

23  [9]  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or
    connection between an individual defendant's actions and the claimed deprivation.  Rizzo v.
    Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v.
24  Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Vague and conclusory allegations of official
    participation in civil rights violations are not sufficient.  Ivey v. Board of Regents, 673 F.2d 266,
25  268 (9th Cir. 1982).

26  [10] At another point in his complaint, plaintiff alleges that in the administrative review of his
27  placement on CSW, "Stewart said it was T. Virga who requested plaintiff be on CSW[.]"  Fifth
    Am. Compl. at ¶ 149.  Presumably through the discovery process, the identification of who
28  actually made the decision will be determined.

1    with evidence of the defendant's knowledge of the protected activity, the defendant's conduct and

2    statements, and the timing of the allegedly retaliatory act.  See Schwartzman v. Valenzuela, 846

3    F.2d 1209, 1212 (9th Cir. 1988).  The Supreme Court has approved of requiring a plaintiff who

4    alleges retaliation to show that his exercise of constitutionally protected conduct was a

5    "substantial factor" or "motivating factor" behind the state actor's adverse action when that action

6    appears on the surface to be legally justified.  Mt. Healthy City Bd. of Educ., 429 U.S. at 287.

7    Having sufficiently alleged his retaliation claim, plaintiff is entitled to the opportunity to produce

8    the evidence that would meet these considerable burdens – that is, to show that defendants in fact

9    harbored an illegitimate motivation for putting him on CSW, assuming defendants demonstrate a

10    facially reasonable suspicion for doing so.

11        Plaintiff has stated a viable claim for retaliatory placement on CSW against defendants

12    Virga and Stewart.[11]  As to all other defendants, plaintiff's claim alleging his retaliatory

13    placement on CSW should be dismissed.

14        Plaintiff also alleges defendants Stewart, Buchanan, Engellener, Mendoza, E. Baker,

15    Montez and Hood withheld plaintiff's legal materials without any legitimate penological purpose

16    for doing so and in retaliation for plaintiff's exercise of his rights under the First Amendment.

17    (Fifth Am. Compl. at ¶¶ 88, 129, 139.)  Defendants do not specifically address this claim

18    advanced by plaintiff in his complaint. The court finds that it is adequately pled.  Therefore,

19    defendants' motion to dismiss should be denied as to that claim.

20             3.  Plaintiff's due process claims

21        Plaintiff also claims that his placement on CSW violated his right to due process under the

22    Fourteenth Amendment.  Plaintiff contends that he had a liberty interest in avoiding CSW and

23    was therefore entitled to notice of the reasonable suspicion that he was carrying contraband and to

24    an opportunity to respond thereto.  In addition, plaintiff claims that he was entitled to an attempt

25    at avoid CSW by submitting to an x-ray.  (Id. at ¶¶ 159-60.)

26

27

28

---

[11] As explained above, it is premature to reach the question of whether defendants Virga, Stewart or any other prison official had a reasonable suspicion sufficient to place plaintiff on CSW.  To the extent that is a defense to plaintiff's retaliation claim, the court reserves resolution of that issue for a properly filed motion for summary judgment.

1    A liberty interest that implicates the protections of due process arises from one of two

2    sources:  the Due Process Clause of the Fourteenth Amendment or state law.  Wilkinson v.

3    Austin, 545 U.S. 209, 222 (2005).

4                    a.    Liberty interest arising directly under the Fourteenth Amendment

5    The Ninth Circuit has found that avoiding CSW does not fall within a prisoner's "narrow

6    range of protected liberty interests" that derive directly from the Fourteenth Amendment.

7    Chappell, 706 F.3d at 1062-63 (citation omitted).   "[A]s long as the conditions or degree of

8    confinement to which the prisoner is subjected is within the sentence imposed upon him and is

9    not otherwise violative of the Constitution," the Due Process Clause does not give rise to a liberty

10   interest in avoiding transfer to more adverse conditions.  Id. at 1063 (quoting Montayne v.

11   Haymes, 427 U.S. 236, 242 (1976)).  In Chappell the court found that "[a]n investigative

12   contraband watch is the type of condition of confinement that is ordinarily contemplated by the

13   sentence imposed.  Only the most extreme changes in the conditions of confinement have been

14   found to directly invoke the protections of the Due Process Clause . . . .  [A] temporary

15   contraband watch does not rise to this level[.]"  Id. at 1063 (citations omitted).

16   In Chappell the Ninth Circuit made very clear that the incidents of CSW that the plaintiff

17   described in that case did not directly trigger the procedural protections of the Fourteenth

18   Amendment.  Still, the qualification cited in Chappell from the Supreme Court's decision in

19   Montayne, that a prisoner has no direct liberty interest in being transferred to adverse conditions

20   "'as long as the conditions [are] not otherwise violative of the Constitution,'" id. (emphasis

21   added), gives this court some pause.  One of the core allegations of plaintiff's complaint here,

22   after all, is that the plaintiff was transferred into conditions that violated the Constitution.  Indeed

23   the court has found in its qualified immunity analysis set forth above that those conditions, as

24   alleged, form the basis of a viable Eighth Amendment claim.

25   The defendants' argument for dismissal does not persuade the court that the qualification

26   cited in Chappell from Montayne does not apply here.  The court concludes, therefore, that for

27   purposes of its Rule 12(b)(6) analysis, plaintiff's federal due process claim survives defendants'

28   motion to dismiss.  See Alexander v. Graham, No. 3:10-cv-0429-RCJ-WGC, 2014 WL 1576737,

at *7 (D. Nev. Apr. 18, 2014) (recommending denial of defendants' motion to dismiss and finding

that plaintiff has stated a colorable claim for denial of his due process rights in connection with

his placement in segregation).  Whether there is any evidence to support that claim is, again, a

question appropriately saved for resolution on summary judgment.

b.  Liberty interest created by state law

In Sandin v. O'Connor, 515 U.S. 472, 483-84 (1995), the Supreme Court held that a

state's correctional law creates a liberty interest if it "imposes atypical and significant hardship on

the inmate in relation to the ordinary incidents of prison life."[12]  In Sandin the Supreme Court

pointed lower courts to three factors in determining whether an atypical and significant hardship

exists:  (1) whether the conditions "mirrored those conditions imposed . . . in analogous

discretionary confinement settings, namely administrative segregation and protective custody;"

(2) the duration and intensity of the conditions; and (3) whether the change in confinement would

"inevitably affect the duration of [the prisoner's] sentence."  Chappell, 706 F.3d at 1064 (citation

omitted) (alteration in original).[13]

The third of these three factors, the effect of CSW on the duration of plaintiff's sentence,

obviously does not lean toward finding a viable due process claim in this case.  Plaintiff has not

alleged, nor could he plausibly allege, that his assignment to CSW extended his sentence.  The

other two Sandin factors, however, do not lend themselves to a sound judgment against plaintiff

solely on his pleadings. "Rather than invoking a single standard for determining whether a prison

hardship is atypical and significant," a court applies the Sandin factors in a "case by case, fact by

---

[12]  Plaintiff specifically describes his placement on CSW as an "atypical and significant hardship" in Paragraph 117 of the operative complaint.

[13]  In Chappell the court did not squarely apply the three Sandin factors.  Instead it found that no correctional officer in 2002 would have had fair notice of whether the conditions at issue violated a state-created liberty interest that required the protections of due process, thereby disposing of the claim on the basis of qualified immunity, without ruling whether it implicated a state-created liberty interest.  Id. at 1064.  Here, the defendants have not argued for the dismissal of plaintiff's due process claims on qualified immunity grounds.  Qualified immunity is an affirmative defense. Norwood v. Vance, 591 F.3d 1062, 1075 (9th Cir. 2010).  Therefore this court has no reason to address such an argument until a defendant explicitly raises it against plaintiff's due process claims, as the defendants have already done against plaintiff's conditions-of-confinement claim.

1    fact consideration." Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003). The first factor is

2    particularly fact-sensitive. It "requires a factual comparison between conditions in general

3    population or administrative segregation (whichever is applicable) and [the challenged condition],

4    examining the hardship caused by the prisoner's challenged action in relation to the basic

5    conditions of life as a prisoner." Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003).

6          A body of factual evidence is therefore necessary to perform the comparative analysis

7    imbedded in the first Sandin factor. Indeed, in Sandin the Supreme Court proceeded through a

8    record-based "comparison between inmates inside and outside" the challenged conditions,

9    concluding with a determination that the inmate's thirty days in Hawaii's disciplinary segregation

10   did not "present a dramatic departure from the basic conditions of [his] sentence" and "did not

11   work a major disruption in his environment." Sandin, 515 U.S. at 485-86. The Supreme Court

12   later called this comparative analysis "the touchstone of the inquiry into the existence of a

13   protected, state-created liberty interest in avoiding restrictive conditions of confinement[.]"

14   Wilkinson, 545 U.S. at 223 (emphasis added). The Supreme Court further noted that since its

15   decision in Sandin federal appellate courts "have not reached consistent conclusions for

16   identifying the baseline from which to measure what is atypical and significant in any particular

17   prison system. This divergence indicates the difficulty of locating the appropriate baseline, an

18   issue that was not explored at length in the briefs." Id.

19         The appropriate baseline and the relevant facts of CSW compared against it have not been

20   fully explored here either as of yet. For now, it is appropriate to heed the Ninth Circuit's

21   suggestion in one of its first post-Sandin opinions, when it remanded a case in light of that

22   intervening decision: "We suggest that if [the district court] finds conditions in the [Intensive

23   Management Unit (IMU)] that violate the Eighth Amendment, the transfer to the IMU would

24   impose 'atypical and significant hardship.'" Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996),

25   /////

26   /////

27   /////

28   /////

1    amended 135 F.3d 1318 (1998).[14]  See also Wagner v. Hanks, 128 F.3d 1173, 1174 (7th Cir.

2    1997) ("[I]t would be difficult (we do not say impossible) to make disciplinary segregation

3    sufficiently more restrictive than the conditions of the general population of such a prison to

4    count as an atypical and significant deprivation of liberty . . . without scraping up against the

5    Eighth Amendment's protection against cruel and unusual punishments.")  Having found the

6    operative complaint contains a plausible basis for an Eighth Amendment claim in this case, the

7    undersigned does not find it implausible that plaintiff could also make a case that eight days on

8    CSW was, under the conditions he personally experienced, an atypical and significant hardship

9    that entitled him to some level of due process.  "The inmate in Sandin . . . had an opportunity to

10   present evidence beyond the allegations in the complaint concerning the differences between the

11   conditions of his confinement."  Jackson, 353 F.3d at 756.  Here, plaintiff has pled sufficient facts

12   to have the same opportunity.[15]  Therefore "[t]he present inquiry is better suited for summary

13   judgment."  Id. at 757.  See also Mizzoni v. Nevada, No. 3:11-cv-00186-LRH-WGC, 2014 WL

14   4162252, at * 7-8 (D. Nev. Aug. 20, 2014) (addressing this issue on summary judgment).

15   /////

16   _____

17   [14]  The Ninth Circuit's elaboration on its suggestion in Keenan only emphasizes the need to wait
     for a fuller presentation of evidence before deciding this claim: "We do not mean to suggest ...

18   that the new [Sandin] test is synonymous with Eighth Amendment violation. ... [T]he test requires
     case by case, fact by fact consideration.  The Sandin Court seems to suggest that a major

19   difference between the conditions for the general prison population and the [challenged
     conditions] triggers a right to a hearing."  Keenan, 83 F.3d at 1089.  The allegations here

20   reasonably imply such a "major difference."

21   [15] The allegations of plaintiff's operative complaint are sufficient even in light of the decision in

22   Resnick v. Hayes, 213 F.3d 443 (9th Cir. 2000).  There, the Ninth Circuit affirmed dismissal of
     the complaint under Rule 12(b)(6) because the inmate did not allege that his adverse placement in

23   a segregated housing unit (SHU) "was materially different from those conditions . . . in purely
     discretionary segregation.  Nor [was] there an allegation that the conditions in the SHU,

24   compared with conditions in the general population, created a 'major disruption' in Plaintiff's
     environment."  Id. at 448.  Here, plaintiff also has not been explicit in his comparison between

25   CSW and the conditions in general population.  Nonetheless, he has adequately alleged an Eighth
     Amendment violation as a result of those conditions alleged – an allegation that, as the Ninth

26   Circuit suggested in Keenan, is relevant in determining whether conditions imposed an atypical
     and significant hardship compared to the incidents of ordinary prison life.  This aspect of

27   plaintiff's allegations distinguishes his case from that of the plaintiff in Resnick, who brought no

28   conditions-of-confinement claim.

1   Nonetheless, because plaintiff identifies only two defendants, Virga and Stewart, with the

2   authority to place him on CSW, his due process claims should be dismissed as to all defendants

3   except them.  See Section III.C.2, above; see also Morris v. Barra, Civil No. 10cv02642 AJB

4   (BGS), 2013 WL 1190766 at *10, *14 (S.D. Cal. Mar. 22, 2013) (dismissing the plaintiff's due

5   process claims because the complaint did not allege the defendants "actually imposed the SHU

6   term" and thus "fail[ed] to sufficiently connect [them] to the imposition of the SHU term").

7   IV.   Plaintiff's claims under state law

8   In the order issued January 9, 2014, the undersigned stated that plaintiff could not proceed

9   on any of his state law claims because the operative complaint was "silent as to whether plaintiff

10  has complied with the [California Tort Claims Act (CTCA)]."  (Order (Doc. No. 45) at 2.)  That

11  aspect of the order will be vacated since plaintiff has, in fact, plead compliance with the CTCA in

12  Paragraph 115 of his fifth amended complaint, as required by state and federal law.  See Cal.

13  Gov't Code § 910; Mangold v. Cal. Pub. Utils Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995).

14  Therefore, the court will apply the screening analysis required by 28 U.S.C. § 1915A to plaintiff's

15  claims under state law.

16  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that

17  are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted,[16]

18  or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. §

19  1915A(b)(1),(2).

20  A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

21  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

22  Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an

23  indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

24  490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

25  pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

26  Cir. 1989); Franklin, 745 F.2d at 1227.

27

28

---

[16] The screening standard for "failure to state a claim" under § 1915A is the same as that applied under Rule 12(b)(6).  Watison v. Carter 668 F.3d 1108, 1112 (9th Cir. 2012).

1    Under 28 U.S.C. § 1367, if a district court has original jurisdiction over a claim, it also

2    "shall have supplemental jurisdiction over all other claims that are so related to claims in the

3    action within such original jurisdiction that they form part of the same case or controversy under

4    Article III of the United States Constitution." 28 U.S.C. § 1367(a). The court must exercise

5    supplemental jurisdiction unless it is prohibited by § 1367(b) or unless one of the exceptions of

6    § 1367(c) applies. Executive Software North America, Inc. v. U.S. Dist. Court for Cent. Dist of

7    California, 24 F.3d 1545, 1556-57 (9th Cir. 1994), overruled on other grounds California Dept.

8    Of Water Resources v. Powerex Corp., 533 F.3d 1087, 1091 (9th Cir. 2008). The district court

9    may decline to exercise supplemental jurisdiction over a state law claim if (1) the claim raises a

10   novel or complex issue of state law; (2) the claim substantially predominates over the claim or

11   claims over which the district court has original jurisdiction; (3) the district court has dismissed

12   all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are

13   other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). The court finds that

14   none of these exceptions applies in this case.

15   Plaintiff contends that California Penal Code §§ 147 and 673 impose a "mandatory duty

16   upon each defendant to treat plaintiff fairly and lawfully humanely [sic]."[17] (Fifth Am. Compl. at

17   ¶ 157.) Courts rarely find a private right of action in the provisions of a criminal statute. See

18   Chrysler Corp. v. Brown, 441 U.S. 281, 316 (1979). On those rare occasions when a court does

19   find such a private right of action, "'there [is] at least a statutory basis for inferring that a civil

20   cause of action of some sort lay in favor of someone.'" Id. at 316 (quoting Cort v. Ash, 422 U.S.

21   66, 79 (1975)). This court has reviewed the penal statutes listed in plaintiff's operative complaint

22   and finds no indication of civil enforcement inherent in them. See Young, 687 F.Supp.2d at 1167

23   (stating that "the Court has found no case that has allowed [California Penal Code § 147] to form

24   the basis of a civil lawsuit" and collecting cases that have rejected that proposition); Jones v.

25   Virga, No. 2:11-cv-3000 KJN P, 2012 WL 1868669 at *4 (E.D. Cal. May 22, 2012) ("California

26

27   [17] The complaint also mentions California Penal Code § 647, which outlaws disorderly conduct.
     This reference by plaintiff appears to be an error. In any event, the cited provision is inapplicable
28   to this case.

22

1   Penal Code § 637 includes no provision for civil enforcement of any kind that is available to

2   plaintiff.")  Plaintiff also lists several sections of Title 15 of California state regulations, all of

3   which pertain to CDCR's rules for responding to inmate misconduct, prison rules violations and

4   discipline, and administrative segregation and segregated housing units. (See Fifth Am. Compl. at

5   ¶ 157.)  There is no authority for finding an implied right of action under any provision of Title

6   15, nor does this court find any such entitlement in the actual text of those regulations.  See

7   Juarez v. Alameda, No. 1:04-cv-5668-REC-LJO, 2006 WL 403839 at *11 (E.D. Cal. Feb. 16,

8   2006) ("The Court has found no authority to support a finding that there is an implied private

9   right of action under Title 15 and Plaintiff has provided none.")

10       Plaintiff also has alleged claims arising under the California Constitution, Article 1, §§ 7

11   (due process and equal protection), 15 (rights of criminal defendants) and 17 (prohibition on cruel

12   and unusual punishment).  (Fifth Am. Compl. ¶¶ 162-164 ("Fourteenth Cause of Action") and ¶¶

13   165-67 ("Fifteenth Cause of Action").)   As to Article 1, § 7, state due process claims in this

14   context are coextensive with federal due process claims; therefore resolution of the federal due

15   process claims decides the state due process claims.  See Juarez, 2006 WL at *11 (citing Los

16   Angeles County Bar Assoc. v. Eu, 979 F.2d 697, 705 (9th Cir. 1992) (stating the California

17   Constitution provides the same basic guarantee as the Fourteenth Amendment of the United

18   States Constitution); Payne v. Superior Court, 17 Cal. 3d 908, 914 n. 3 (1976).  Article 1, § 15 of

19   the state constitution, which states the rights of an individual charged with a crime, is facially

20   inapplicable to an inmate's post-conviction claims under the federal Civil Rights Act.  Finally,

21   there is no private cause of action under the cruel and unusual punishments clause of the

22   California Constitution, Article 1, § 17.  Katzberg v. Regents of the University of California, 29

23   Cal. 4th 300, 329 (2002).

24       Therefore, to the extent plaintiff seeks relief directly under the California Constitution,

25   only his state due process claim under Article 1, § 7 is viable.  However, recovery on that

26   allegation depends on the resolution of his federal due process claims and therefore no further

27   analysis of it is necessary.  Payne, 17 Cal. 3d at 914 n. 3.  All other claims alleged by plaintiff

28   /////

1   under the state constitution, the California Penal Code or the California Code of Regulations

2   should be dismissed without leave to amend.

3   V.  Conclusion

4          Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED that:

5          1.      The court's order of January 9, 2014 (Doc. No. 45), is vacated in part, insofar as it

6   states plaintiff has not complied with the pleading requirements of the California Tort Claims Act.

7          2.      The Clerk of Court is directed to assign this case to a district judge.

8          IT IS RECOMMENDED that the motion to dismiss (Doc. No. 47) be granted in part and

9   denied in part, as follows:

10         1.      The court should grant the motion to dismiss as to all defendants on the claims for

11  inadequate medical care, for failure to train and supervise, and for violation of the federal Equal

12  Protection Clause.

13         2.      The court should grant the motion to dismiss on the claim for retaliatory placement

14  on contraband surveillance watch as to all defendants except defendants Virga and Stewart.  As to

15  defendants Virga and Stewart, the motion to dismiss that claim should be denied.

16         3.      The court should grant the motion to dismiss on the claim for retaliatory

17  withholding of legal materials as to all defendants except Stewart, Buchanan, Engellener,

18  Mendoza, E. Baker, Montez and Hood.   As to defendants Stewart, Buchanan, Engellener,

19  Mendoza, E. Baker, Montez and Hood, the motion to dismiss that claim should be denied.

20         4.      The court should grant the motion to dismiss on the claim for deprivation of

21  federal due process as to all defendants except defendants Virga and Stewart.  As to defendants

22  Virga and Stewart, the motion to dismiss that claim should be denied.

23         5.      The court should grant the motion to dismiss on all claims alleged under state law

24  except for the claim for violation of due process under the California Constitution.  As to that

25  claim, all defendants should be dismissed except for defendants Virga and Stewart, as to whom

26  the motion to dismiss the state law claim for deprivation of due process should be denied.

27         6.      The court should deny the motion to dismiss on the Eighth Amendment claim for

28  unconstitutional conditions of confinement as to all defendants.

1         These findings and recommendations are submitted to the United States District Judge

2    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

3    after being served with these findings and recommendations, any party may file written

4    objections with the court and serve a copy on all parties.  Such a document should be captioned

5    "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

6    objections shall be served and filed within fourteen days after service of the objections.  The

7    parties are advised that failure to file objections within the specified time may waive the right to

8    appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

9    Dated:  August 29, 2014

10

11   _____
     DALE A. DROZD

12   UNITED STATES MAGISTRATE JUDGE

13   hm
     romo2898.57

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

25